<table>
<tr><td>13</td><td>587</td></tr>
<tr><td>103</td><td>529</td></tr>
<tr><td>13</td><td>587</td></tr>
<tr><td>111</td><td>201</td></tr>
</table>

## HATCHETT AND BROTHER v. GIBSON.

1. Pursuant to a contract, between the plaintiffs, and defendant, the latter deposited his cotton in the warehouse of the former, where it was destroyed by fire. The former, having brought an action against the latter, to recover for advances made on the deposit of the cotton—held, that if the defendant could recover damages from the plaintiffs, for the loss sustained in the destruction of the cotton, he could *recoup* such damages in this action.

2. Warehousemen, are bound to take reasonable, and common care, of any commodity entrusted to their charge; and if a loss occurs under circumstances which shows the want of such care, they are bound to make it good.

3. The object of the defendant being to *recoup* the damages, it was compe-

tent for him, when sued for the advance, to prove the *destruction* of his cotton by fire, and the manner in which it occurred.

4. An objection to an entire deposition is not good, if part is sufficient. The objectionable part should be pointed out. The fact, that certain parts of the deposition were rejected, cannot make the refusal of the court to sustain the objection to a greater extent, an available error.

5. The question being whether a warehouse was fire-proof, a witness stated he did not know what constituted a fire-proof warehouse, but that he knew what was regarded as such in Wetumpka, (where this house was situated,) and described the constituents of such a house, and that the plaintiffs' did not conform to it : Held, that although this answer was *rejected by the* court, it was allowable to refer to it, to determine whether another fact disclosed, was competent evidence.

6. To determine whether a warehouse was fire-proof, a witness may describe his own warehouse, and show how the plaintiffs' was built.

7. It was competent to prove in what manner the warehouse of T, which was fire-proof, was built, that it was not burned, and the special efforts by which it was saved ; but a witness could not be asked, whether it was not " with great difficulty " the warehouse of T was saved.

8. Proof of the rate of insurance, in the warehouse of the plaintiffs, and that of T, and the practice of planters and merchants in insuring in either warehouse, is inadmissible.

9. Proof, that a witness introduced against the plaintiffs, had used expressions showing that he entertained ill feelings towards the plaintiffs, without proving what the expressions were, is inadmissible.

10. To prove that the warehouse was to be fire-proof, the advertisement of the plaintiffs, and their receipts, as well as their declaration to the defendant, after he had begun to store his cotton, were admissible evidence.

11. If it was a term of the contract, that the defendant's cotton was to be stored in a fire-proof warehouse, and the cotton was lost by the failure to provide such a house, the plaintiffs must make good the injury. The fact that the defendant was in the warehouse, after he had begun to deliver his cotton, can have no influence upon the contract.

12. If, after a contract to store the defendant's cotton in a fire-proof warehouse, the latter dispensed with the completion of the warehouse, and consented that it need not be made fire-proof, such consent, if given, cannot be withdrawn after a loss has actually occurred, though there was no additional consideration for such consent.

Error to the Circuit Court of Talladega.

Assumpsit, by the plaintiffs in error. Before the Hon. G. W. Stone.

The action was brought to recover for advances of money

and merchandize, on cotton in store. The defence was, that the cotton was destroyed under such circumstances as authorized the defendant to *recoup* the damages.

The evidence tended to prove, that the plaintiffs agreed to store the defendant's cotton, upon which the advance was made, in a fire proof warehouse, and that 106 bales of the cotton were destroyed by fire, whilst in the warehouse.

The defendant read the deposition of one Thomas, a builder and architect, and among other questions, asked him—Do you know what constitutes a fire proof warehouse? if yea, state whether the house used by plaintiffs for storing cotton, was a fire proof warehouse? If you say it was not, state in what its deficiencies consisted. Was any part of it built as a fire proof warehouse? if yea, what part, if any, and what was not. What part of the building was most accessible to fire? Was any portion of it entirely unprotected, by slate or other non-combustible matter? What part, and to what extent, were you acquainted with the construction of the part of the house designated as the brick wall in your diagram? If yea, state what was its sufficiency for the purpose for which it was built. Did it answer the purpose of itself, or did it need supports or stays? If the latter, of what material were they, and upon being burned, what would be the consequence? &c.

He answered, " I do not know what constitutes a fire proof warehouse. No house, I would say, with any wood, or combustible materials in its walls, roof, or other part, is fire proof. Plaintiffs' warehouse was not fire proof." The witness then at length stated why it was not proof against fire.

In answer to another interrogatory, he stated, that he had a warehouse in Wetumpka, distant 120 feet from the plaintiffs', the construction of which he described. That it was exposed to the same fire, on two sides, which consumed the plaintiffs', and was saved by the timely exertion and diligence of six or eight persons, who extinguished the fire which fell on the cotton.

He also stated, I do not know, but believe, plaintiffs' house might have been saved, if equal to mine, and if ordinary diligence had been used. The buildings near plaintiffs' ware-

house were of such light and inflammable materials, that they would consume very rapidly, so as not to endanger greatly a good fire proof warehouse, when ordinary diligence was used.

The plaintiffs objected to the deposition for irrelevancy, and because it detailed the opinions of the witness, but the court overruled the objection, and the plaintiffs excepted.

The plaintiffs also offered to prove, that it was with great difficulty, that Thomas's warehouse was saved, but on the objection of the defendant, the court excluded the testimony, and the plaintiffs excepted. Plaintiffs further offered to prove, that insurance was effected on cotton in plaintiffs' warehouse before, and at the time of the fire. That a majority of the merchants, and many of the farmers, had cotton insured whilst in store in both warehouses. The proof was excluded, and plaintiffs excepted.

The plaintiffs offered to prove by one Lundee, that the witness, Thomas, entertained ill feelings towards plaintiffs at the time he gave his deposition. That he heard him use expressions about the plaintiffs, showing he entertained ill feelings towards them, but the witness could not remember the language, or the substance of it. On motion of the defendant it was rejected, and the plaintiffs excepted. The plaintiffs also moved to exclude all the proof relating to the fire, and the destruction of the cotton as irrelevant, which the court refused, and they excepted.

The court charged, that if the plaintiffs, by their representations, induced the defendant to store his cotton in their warehouse, under the belief that it was fireproof when it was not, and the cotton, whilst in their possession was destroyed by fire, because the house, or sheds, were not fire proof, the plaintiffs cannot recover for an advance upon the cotton, if the loss exceeded such advance, although he may have been in the warehouse after a part of the cotton was stored.

That if the cotton of the defendant could have been saved by ordinary diligence, they must find for the defendant, if the cotton was of more value than the advance.

That if, by representing that their warehouse, and sheds, were fire proof, the plaintiffs induced the defendant to store

his cotton with them, and it was afterwards destroyed by fire, in a warehouse not fire proof, the plaintiffs are estopped from saying that the defendant knew they were not fire proof, unless he knew it before he commenced storing his cotton.

That a warehouse man for hire, is as a bailee, held to stricter diligence when the articles deposited with him are of great, than if they were of small value; and would be held to stricter diligence when his house was stored with cotton, than if nothing was in it.

That if the cotton would have been destroyed if the warehouse had been fire proof, the defendant could not resist a recovery, unless the loss was caused by the carelessness of the plaintiffs.

The plaintiffs excepted to these charges, and assign for error all the matters of law arising upon the bill of exceptions.

HOPKINS and MORGAN, for plaintiffs in error.

1. The question is asked Thomas, (a witness for defendant,) by defendant, "Do you know what constitutes a fire proof warehouse?" He answered, "I do not; no house, I would say, with any wood, or combustible material in it is fire proof. Plaintiffs' house for storing cotton was not fire proof."

2. Thomas was allowed to prove the construction of his own house, and that it was not burned, and that plaintiffs' house was not built of the same material, and in the same manner with his house.

3. Thomas did not see the wall of plaintiffs' house fall, but was allowed, after stating his reasons, to say, "hence I conclude, that if the props were removed, the wall would fall, and the props being removed the walls did fall."

4. To the 9th cross interrogatory by plaintiffs, "Was Hatchett's house equal or inferior to the one occupied by yourself at that time—if it had been as good, could it have been saved by ordinary diligence?" The answer is, "I do not know, but believe plaintiffs' house might have been saved if equal to mine, if ordinary diligence had been used. The buildings near by plaintiffs' house were of such inflammable material that they would consume rapidly, so as not to endanger as

good a fire proof warehouse as mine, or Mr. Cromelin's house where ordinary diligence was used.

"I understand by ordinary diligence, such exertions as one would put forth to save life, limb, or property, when afraid of danger." The 9th cross interrogatory was only propounded, to be used in the event that a similar interrogatory propounded by defendant should be answered. Olds v. Powell, 7 Ala. Rep. 652; Jefferson Ins. Co. v. Cothnel, 7 Wend. 72, 77-8.

5. The court refused to allow plaintiffs, on the cross examination of defendant's witnesses, to ask them, "whether it was not with great difficulty said Thomas's house was saved."

6. The court refused to allow plaintiffs to prove by Mr. Lundie, that he had heard Thomas use expressions, when talking about plaintiffs, showing that he entertained ill feelings towards plaintiffs, Mr. Lundie not being able to state the words used by Thomas. 1 Johns. R. 99, 103; McKee v. Nelson, 4 Cow. R. 355.

7. The seventeen cotton receipts presented each a distinct substantive contract, on which Gibson could have brought his separate actions, and presented as many different issues as there were cotton receipts. A *recoupment* for a part of the receipts would not have barred an action on the balance of the receipts. Bartholomew v. Pierce, 3 Hill, 171, 175.—The contract for the storage of the cotton was distinct from the contract for advances, although it related to the same subject matter.

8. The sixth charge given by the court affirmed the doctrine, that it is no ratification of the act of the warehouseman in storing the cotton in a house not fire proof, if the consignor knew the condition of the house, and continued to store cotton in it, unless he knew the condition of the house before he commenced storing any part of his cotton. Story on Agency, 248-50.

9. Gibson was not misled by the advertisement, or cotton receipts. He sent most of his cotton to the warehouse after he knew its condition. He made no objection to that condition when he first learned it, but some time afterwards informed the plaintiffs he thought the shed ought to be cover-

ed, which was done immediately afterwards.    The plaintiffs
were guilty of no fraud.    They informed the defendant, a-
bout the 24th of October, that they intended to do nothing
more that season, on the warehouse, except to cover the shed.
The defendant sent most of his cotton there after that com-
munication.    7 Wend. Rep. 71 ; 3 Ala. Rep. 660.

L. E. PARSONS, for defendant.

1. This is an action of assumpsit, for money and merchan-
dize advanced by plaintiffs to defendant, on cotton in store.
Any defence which shows the plaintiff is not in justice en-
titled to recover the advance, is proper in this action.

The cotton was in fact a pledge.    Its destruction or loss
for the want of ordinary diligence on the part of plaintiffs is
always a defence to an action for the money advanced.

The defendant will be permitted to *recoup* his damages
where the liability arises out of the same contract.    Crad-
dock v. Stewart, 6 Ala. 82 ; Peden v. Moore, 1 Stew. & P.
71 ; Batterman v. Pierce, 3 Hill, 174 ; Green v. Linton, 7
Porter, 133 ; Hill v. Bishop, 2 Ala. 320.

Thomas's deposition was objected to for irrelevancy.    His
opinions were excluded, although he was a master builder
by trade.    His evidence shows, that a warehouse built by
him, in the form usually denominated fire proof, was not
burned, although attakced on two sides at once, by the fire.

Any thing which would show the want of ordinary dili-
gence on the part of plaintiffs, in keeping the cotton, was
proper evidence.    And it is insisted that all the facts and
circumstances offered in evidence do show, or tend to
show it.

There was no charge asked, or given, on the fact set out
in the bill of exceptions, that the defendant sent word to
plaintiffs he was satisfied with the manner in which the
cotton was kept.    No point arises on it in this court.

The charges of the court put this case on the proper
ground.

COLLIER, C. J.—In addition to what is stated in most of
the receipts which were given upon the delivery of the cot-

75

ton at the warehouse, in respect to the plaintiffs' lien for advances, the bill of exceptions affirms that proof was adduced by the defendant, tending to show that the account upon which he is sued, was for advances on the faith of his cotton in the plaintiffs' possession. The first question which arises upon this branch of the case is, whether the defendant can resist a recovery by proving that the plaintiffs did not take care of his cotton according to their contract, and that it was negligently destroyed by fire. It is not pretended to rest this defence upon the law of set-off, as regulated by statute, but to bring it within the influence of the doctrine of *recoupment*, as extended by modern decisions. This is applied " for the purpose of reducing the plaintiffs' damages, for the reason that he himself has not complied with the cross obligations arising under the same contract. Thus, in an action to recover compensation for services rendered, the employer is entitled to show by way of *recoupment* of damages, loss sustained by him through the negligence of the person employed," &c. Barbour on Set-off, 26. Mr. Sedgwick, in his treatise on the measure of damages, p. 461, says that while *recoupment* " originally, merely implied a deduction from the plaintiff's demand, arising from payment in whole or in part, or from recovery, or some analogous fact, it is now understood to embrace counter claims of the defendant, and to be, in short, a kind of irregular and unliquidated set-off, which has crept in notwithstanding the rigorous terms of the statute." Where the plaintiff brought an action to recover a stipulated sum for work done as a carpenter, it was held that the defendant might show that the materials were defective, and the work done in an improper and insufficient manner. Basten v. Butter, 7 East's Rep. 479 ; Farnsworth v. Garrard, 1 Camp. Rep. 38 ; Fisher v. Samuda, et al. Id. 190 ; Peden v. Moore, 1 Stewt. & P. Rep. 70 ; Gleason & Viele v. Clark's adm'r, 9 Cow. Rep. 57; Spalding v. Vandercook, 2 Wend. Rep. 431; McAlister v. Reab, 4 Wend. Rep. 483, and 8 Id. 109. In Still v. Hall, 29 Wend. Rep. 51, which was an action of assumpsit by the master of a sloop for his wages, it was held competent for the owners to *recoup* the damages sustained by them in consequence of the plaintiff's negligence in laying the sloop in such a way that she was run

into and sunk. See also Blanchard v. Ely, 21 Wend. Rep: 342. *Recoup*, it is said, " is synonymous with defalk or discount. It is now uniformly applied where a man brings an action for a breach of contract between himself and the defendant; and the latter can show that some stipulation in the same contract is made by the plaintiff, which he has violated, the defendant may, if he choose, instead of suing in his turn, *recoup* his damages arising from the breach committed by the plaintiff, whether liquidated or not." Ives v. Van Eps, 22 Wend. Rep. 155. So, if in an action for use and occupation, the defendant is entitled to damages for not repairing the tenement, they may be set up by way of reducing or extinguishing the rent. Westlake v. De Graw, 25 Wend. Rep. 669. See Etheridge v. Osborn, 12 Wend. Rep. 529; Tone v. Brace, 8 Paige's Rep. 597. Batterman v. Pierce, 3 Hill's Rep. 171, was an action on a promissory note, given for wood which had been destroyed by the payee's burning a piece of fallow ground adjoining the lot where the wood lay, and against the consequences of which he had undertaken to indemnify the defendants when the note was given. The question was, whether this evidence was a defence to the action; and the court said, " when the demands of both parties spring out of the same contract or transaction, the defendant may *recoup*, although the damages on both sides are unliquidated; but he can only *set-off* when the demands of both parties are liquidated, or capable of being ascertained by calculation." Upon an objection that the damages arose under an agreement to indemnify against fire, which was collateral to the contract of sale, the court admitted " that there could be no *recoupment* by setting up the breach of an independent contract on the part of the plaintiff," but held that the sale of the wood, and the stipulation in respect to the fire, were embraced in the same contract. See Taggard v. Curtenius, 15 Wend. Rep. 155; Willoughby v. Comstock, 3 Hill's Rep. 389; Button v. Turner, 6 N. Hamp. Rep. 497; Crowninshield v. Robinson, 1 Mason's Rep. 93; Miller v. Smith, Id. 437; Dodge v. Tileston, 12 Pick. Rep. 328; Harrington v. Stratton, 22 Pick. Rep. 510; Perley v. Balch, 23 Pick. Rep. 284; McAlpin v. Lee, 12 Conn. Rep. 129; Mondel v. Steel, 8 Mees. & Wels. Rep. 858. Where the plain-

tiff accepted employment in a manufactory, with a knowledge of the regulation adopted by the company, requiring all persons employed by the company to give four weeks' notice of an intention to quit their service, and left their service without giving such notice ; in a suit for his wages, the plaintiff was held liable for all damages caused by not giving the notice, and that in such suit they should be deducted from his wages. Hunt v. Otis Company, 4 Metc. Rep. 464. In trover for the recovery of goods, it has been decided that the defendant, who had a lien on them for freight, is entitled to *recoup* it. Everett v. Saltus, 20 Wend. Rep. 267. So, where the defendant agreed to furnish a vessel with certain freight, but failing to comply with his contract, third persons offered to make up the deficiency : *Held*, that the master was bound to accept the offer of such persons, and that the defendant could claim a deduction of the freight that they would have paid. Hecsher v. McCrea, 24 Wend. Rep. 267. See Gibson v. Gibson, 15 Mass. Rep. 106 ; Austin v. Foster, 9 Pick. Rep. 341.

Warehousemen, it is said, are bound to take reasonable and common care of any commodity entrusted to their charge, and if a loss occurs under circumstances which show the want of such care, they are bound to make it good. Story on Bailm. 289, *et seq.* The same degree of diligence in respect to the preservation of a pawn, is required of a pawnee. Id. 222, *et seq.*

The contract between the plaintiffs and defendant was, that the latter should deposit his cotton in the warehouse of the former, that the plaintiffs should advance on it, retaining a *lien* for their reimbursement. To this contract the law tacitly annexed the stipulation that the plaintiffs would take ordinary care in its preservation, and if they did not, would pay the defendant for any loss resulting from neglect. These several stipulations, although they may embrace distinct duties and obligations, constitute one entire contract. This is sufficiently shown by their mere statement, and the breach of any undertaking on the part of the plaintiffs, by which the defendant sustained damage, would furnish a proper ground of *recoupment* in the present action, which is brought to recover back the advances made by the warehousemen. It is

needless to amplify this point; for many of the authorities cited, are direct and explicit, and fully support the conclusion we have expressed. This being the law, it was clearly competent to allow the defendant to prove the destruction of his cotton by fire, and the manner in which it occurred.

What has been said, will suffice to show that the objection to the deposition of Thomas on the ground of irrelevancy, was properly overruled. As for the general objection to the opinions of the witness, it might have been overruled *in toto*, without looking into the deposition to see if it was objectionable for that cause, upon the ground that the plaintiffs did not specify the particular portions of the deposition they desired the court to exclude. And the fact that certain parts of the deposition were rejected, cannot make the refusal of the court to sustain the objection to a greater extent an available error; for the reason we have stated, that the plaintiffs failed to particularize.

But conceding that the objections which are now pointed out to the deposition of Thomas had been specified at the trial, and we are inclined to the opinion that they should have been overruled. We will consider them severally. The witness, it is true, states that he does not know what constitutes a "fire proof warehouse," that is, a building exempt from liability to fire; but he knows what is regarded as such in Wetumpka, and describes it with particularity, and that the plaintiffs' warehouse did not conform to the description. It is insisted that the last fact stated was inadmissible, because he denied in general terms that he did not know what constituted a fire proof house, and what he said in respect to the mode in which such a house was built in Wetumpka, was rejected by the circuit court. The question was whether the plaintiffs' house was fire proof according to the understanding of the term generally, or at Wetumpka; and notwithstanding a part of the answer was adjudged inadmissible, yet it was allowable to refer to it to determine whether another fact disclosed, was competent evidence. Looking, then, to the part of the answer which was excluded, we are satisfied that what was said as to the nonconformity of the plaintiffs' warehouse to the Wetumpka standard, was properly admitted.

We can conceive of no objection to the description given

by the witness of his own warehouse, and to the statement that the plaintiffs' house was not built in the same style—these are facts merely, and not opinions.

In respect to the answers to the sixth and ninth questions propounded by the plaintiffs on cross-examination, they may perhaps state a matter of opinion, which if it had been elicited by the defendant would be incompetent evidence ; but the frame of the questions is such as not only to call for a special narration of facts—the witness is also invited to express his conclusions upon them.

The court rightly admitted the defendant to show in what manner Thomas's warehouse (which was fire proof) was built, that it was not burnt, and the special efforts by which it was saved. But a witness who testified to these facts, could not be asked, on cross-examination, *whether it was not with great difficulty that Thomas's house was saved;* the witness had furnished the jury with the *data* on which they might found a conclusion, and it was not permissible for him to express his *opinion.*

The testimony offered by the plaintiffs in respect to the relative rates of insurance on cotton stored in their warehouse and that of Thomas, as well as the practice of planters and merchants as to insuring cotton stored in either warehouse, was properly excluded. It is difficult to perceive its pertinency, as the defendant was not bound to insure, but might protect himself by selecting the house which he deemed most secure against fire or other casualty. Conceding, however, that it would have been competent evidence, if offered by the plaintiffs in making out their case, or if the defendant had adduced proof to which it was a reply, it is enough to say that it was offered by way of rebutting the defence, and to have made it admissible as a matter of right, it should have been a replication to facts proved on the part of the plaintiffs, and not the introduction of new matter. Ivey v. Phifer, at this term.

It may be conceded that it is competent for a party to discredit or impair the testimony of his adversary's witnesses, by proof of particular acts of hostility of those witnesses towards him, or by remarks indicative of a revengeful spirit. Rixey v. Bayse, 5 Leigh's Rep. 330 ; Harris v. Tippett, 2

Hatchett & Bro. v. Gibson.

Camp. Rep. 637; Rex v. Rudge, 2 Peake's N. P. Cas. 232; Atwood v. Welton, 7 Conn. R. 66.   The fact proposed to be proved by the witness Lundie, was, that he had heard Thomas, previous to his examination, use expressions about the plaintiffs, showing that he entertained ill feelings towards them; but witness did not remember the language employed, or the substance of it.   To have authorized the admission of such testimony to discredit another witness, the language used, or at least the substance of it, should be proved, that the court may determine its competency, and the jury the effect to which it is entitled.

It was allowable to fortify the inference from the plaintiffs' advertisement, and the form of the receipts they gave for cotton, that they stipulated with the defendant to store his cotton in a fire proof warehouse.   Their declaration to Bradford, after they began to receive cotton, in the fall of 1844, that they intended to make their warehouse fire proof, was admissible for the purpose stated; and perhaps also, it may tend to show that the defendant did not dispense with that term of the contract, or that the plaintiffs did not inform him, after he began to deliver his cotton, they did not intend to complete their warehouse that season, as they had agreed to do.

We are now brought to consider the charges to the jury. 1. The first affirms that if the plaintiffs induced the defendant to send them his cotton, under an assurance that the warehouse in which it was to be stored should be made fire proof by the first of October, 1844, and failed to fulfil their engagement, in consequence whereof the cotton was destroyed by fire, then the plaintiffs are not entitled to recover for advances made on the cotton, if the cotton was worth more than the advances; and this although the defendant may have been in the warehouse after a considerable part of his crop had been deposited there.   This charge, we think, is unobjectionable.   If it was a term of the plaintiffs' contract, that their warehouse should be fire proof, and the defendant's cotton was lost by the plaintiffs' failure to provide such a house, then they should make good the damage consequent upon the breach of their undertaking.   The mere fact that the defendant was in the warehouse after he had began to

deliver his cotton, can have no influence upon the contract; for he may not have discovered it was not fire proof, and there was no obligation upon him to ascertain that it was such as the plaintiffs stipulated it should be.

2. If the plaintiffs could have saved the defendant's cotton by *ordinary diligence*, it was incumbent on them to do so, and if it was lost by their neglect, the defendant is entitled to *recoup* the damages in this action. The general assertion, that a party who induces another to act upon the faith of his false representation, is liable to make good any injury resulting from it, it must be admitted is not universally true, but as applicable to the case before us, we think it is not erroneous. If the plaintiffs sought the defendant's patronage, and assured him that if he would store his cotton with them, they would deposit it in a fire-proof warehouse and confiding in the plaintiffs' promise, the defendant sent them his cotton, this would amount to a contract that the cotton should be thus kept. It would be something more than a mere representation, which, in order to impose a legal liability, must not only be false but fraudulent also. See Lyon v. Elliott, 3 Ala. Rep. 654, 660; Jefferson Ins. Co. v. Cotheal, 7 Wend. Rep. 72.

The latter part of this charge is not clearly stated in the bill of exceptions, but its meaning is obvious enough.—When expressed in plain and intelligible terms it affirms that in order to warrant the inference that the defendant dispensed with that part of the plaintiffs' undertaking which required them to store his cotton in a fire-proof warehouse, it should appear the defendant knew the house was not of that description before he delivered any part of the cotton. To ascertain whether an instruction is proper, it is always allowable to look to the evidence. Now in the present case it was proved, that the defendant was in the warehouse after the first of October, when he had delivered a considerable quantity of his crop, and to a remark by one of the plaintiffs, that he did not intend to have any more work done on the warehouse, during the business season of '44-5, he made no reply; but not long afterwards directed his teamster to tell the plaintiffs that the shed should be covered, which was completed in a short time thereafter. The branch

of the charge we are considering, in effect excluded this evidence from the jury, as part of the cotton was delivered before the facts related, actually occurred; and in this we think the circuit court erred. It was certainly competent for the defendant to relieve the plaintiffs from the performance of any term of their contract—he might by his acts, as well as by words, assent to the storing of his cotton in a house of material and structure different from what the plaintiffs' contract contemplated; and this as well while the cotton was being delivered, as before any part of it was taken to the warehouse. We do not undertake to say that the facts establish such a waiver, but they should not have been withdrawn from the consideration of the jury, or their inquiries in respect to them foreclosed. Chitty on Con. 4 Am. ed. 90, 602, 603, and notes on each of these pages; Cox v. Bennet, 1 Greenl. Rep. 167; Shaw v. Lewistown Turnp. Co. 2 Pennsyl. Rep. 454; Baldwin v. Farnesworth, 1 Fairf. Rep. 414; Gage v. Coombs, 7 Greenl. Rep. 394; Wyer v. Merrill, Id. 342. See also Hayden v. Madison, 7 Greenl. Rep. 76; Abbott v. Hermon, Id. 121; Fleming v. Gilbert, 3 Johns. Rep. 520. The contract was certainly intended for the benefit of each party, and it was competent for them, by mutual assent, to dissolve it either in whole or in part. The defendant may have dispensed with the completion of the warehouse, and consented that it need not be made fire proof without any additional consideration; and if such consent has been given, it cannot be withdrawn after a loss has actually occurred.

3. This charge perhaps cannot be defended to the full extent. It may be admitted that the degree of care required of a bailee is proportioned to the nature, intrinsic value, &c. of the article intrusted to his keeping. A man will not be expected to take the same care of a bag of oats, as of a bag of dollars; of a bale of cotton, as of a box of diamonds or other jewelry; of a load of wood, as of a box of rare paintings; of a rude block of marble, as of an exquisite sculptured statue. The bailee therefore ought to proportion his care, to the injury or loss which is likely to be sustained by any improvidence on his part, and to the watchfulness necessary to the preservation of the article. Hence, as dollars, jewelry and

fine paintings, present a greater temptation to the thief, and are more easily secreted, than oats, cotton or wood, or a finished statue is more liable to injury than rough marble, a bailee should bestow more diligence in their safe keeping. But the dictates of common sense would seem to require that the warehouseman who receives cotton on deposit for a certain compensation, should be equally careful in preserving the crop of one who makes but a single bale, as that of him who makes a hundred. In respect to each of such bailors, he is bound to ordinary diligence. Story on Bailm. § 15; Tracy v. Wood, 3 Mason's Rep. 132; Anderson v. Foresman, Wright's Rep. 598; Bland v. Wormack, 2 Murph. Rep. 373; Batson v. Donovan, 4 B. & Ald. Rep. 21, et post. Whether the plaintiffs could have been prejudiced by this instruction to the jury, we will not stop to inquire; we notice it, merely to state the law as a guide in the ulterior progress of the cause.

4. This charge begins by stating a truism, but the principle, if it be one, cannot be easily applied. The remaining part of it is in effect considered and disposed of in what has been said upon other parts of the case. For the error in the second charge, the judgment is reversed, and the cause remanded.

CHILTON, J., not sitting.