ALBANY,<br>Jan. 1836.<br><br>Taggard<br>v.<br>Curtenius.

New trial granted.

---

## TAGGARD *vs.* CURTENIUS & JONES.

Where a party has a right of action on a promissory note, on its arriving at maturity, no subsequent neglect or improper act of his in relation to a collateral matter will deprive him of that right—thus, where the holder of a note accepted *bridge stock* as collateral security for the debt, and agreed to dispose of it and apply the proceeds to the payment of the note, *it was held* that the *neglect* of the payee to dispose of the stock until after the bridge was carried off by a flood, whereby the value of the stock was greatly lessened, could not be pleaded *in bar of an action* on the note.

Matters of *defence* or of *relief* in equity are not in general pleadable at law.

DEMURRER to pleas. The plaintiff declared as the endorsee of two promissory notes, made by the defendants, payable to *William Taggard & Co.*: one dated 13th January, 1827, for $1960, and the other dated 28th February, 1827, for $2000, and each payable 60 days after date. Curtenius, one of the defendants, pleaded, *first*, that on the day of the date of the second note, the defendants deposited with the payees of the note, of whom the present plaintiff was one, 45 shares of *Cheraw Bridge* stock, 30 shares of Cheraw Bank stock, and Cheraw Bank bills to the amount of $2000, of the

value of $10,000 in the whole ; and that it was then agreed between the parties that the payees should use due diligence in disposing of the property thus deposited, at the highest price, and that the proceeds, after deducting 19-70ths, should be applied to the credit of the defendants, and to the payment of the notes declared on. The defendant then avers that the payees received great sums as dividends on the bridge stock, and *neglected* to dispose of the same, and of the bank stock and bank bills for four years, and neglected particularly to dispose of the bridge stock, although it produced an annual dividend of seven per cent., and might have been sold for $4500, and improperly retained the same until the bridge was carried away by a flood in *July*, 1831, and then, in *November* following, disposed of the stock, whereby the defendants sustained damage to the amount of $5000. The defendant also put in a *second* plea, substantially like the first, varying from it only in the averments that the stock was deposited as collateral security, that *since* October, 1828, the payees had *neglected to notify* the defendants that the bridge stock remained on hand unsold, and that, in October, 1831, they sold the stock without giving the defendants notice of their intention to do so. To these pleas the plaintiff demurred.

*I. L. Wendell*, for the plaintiff, admitted that the pleas disclosed matter of relief in equity, but insisted that it could not be pleaded at law. When the notes came to maturity, the absolute legal right to demand payment became vested, which cannot be defeated at law, whatever may be the equitable defence. In support of this position, he cited 10 *East*, 369, *id.* 34, *Kirby's R.* 193, 7 *East*, 148, 8 *id.* 344, 5 *Wendell*, 519, 2 *Bos. & Pul.* 45, 7 *Com. L. R.* 62, 8 *Price's R.* 467. The only exceptions to this current of authority are the cases of *Clark* v. *Niblo*, 3 *Wendell*, 24, and S. C., 6 *Wendell*, 237, *Pain* v. *Packard*, 13 *Johns. R.* 174, and *King* v. *Baldwin*, 17 *id.* 384. To bring this case within the principle of the two last cases, the payees should have been *requested to sell the stock.* No such request is averred, although one of the pleas virtually admits, that as late as October, 1828, *eighteen months* after the last note fell due, the defendants *knew* that the stock

remained unsold. The defendants may have a good cause of action against the plaintiff and his copartners for breach of the agreement, and may have a right of set-off for monies received as dividends or as the proceeds of the stocks, but these matters cannot be set up in bar of the plaintiff's action.

*S. Stevens*, for the defendants.

*By the Court*, BRONSON. J. This is not a plea that the plaintiff has taken a higher security than he had before, and so extinguished the debt. *Bacon's Abr. tit. Extinguishment*, (*D*). Nor is it a plea that he has accepted a collateral thing in satisfaction of the demand, *Anderson* v. *The Highland Turnpike*, 16 *Johns. R.* 86 ; but it is a plea that the plaintiff has received certain bridge and bank stock and bank bills, "as collateral security" for the payment of the notes. This is no answer to the action. It did not absolve the defendants from their undertaking to pay the notes when they should fall due. The acceptance of a mortgage or other collateral security for the payment of a debt, neither satisfies the original demand nor suspends the right of action to enforce it. *Day & Penfield* v. *Leal & Leal*, 14 *Johns. R.* 404.

The plea does not allege that there was any agreement to enlarge the time of payment mentioned in the notes, nor that the stock was to be sold before the notes came to maturity, but only that the payees were to use due diligence in disposing of it at the highest price. Nor is it alleged that the plaintiff might have sold the stock before the notes fell due, or that he is chargeable with any negligence for omitting to do so. But the complaint is, that the plaintiff carelessly and improperly neglected to sell the bridge stock for many years, and until after the bridge was carried away by a flood, in July, 1831. When the negligence of the plaintiff commenced is not averred, but only that he ought to have sold before July, 1831. At that time both of the notes had been due more than four years, during all which period the plaintiff might have had his action to recover the debt. If the plaintiff had a right of action on the notes when they came to maturity, no subsequent neglect or improper act of his, in relation to a

collateral matter, could deprive him of that right. This brings us to the real difficulty in sustaining the defence. The defendant Curtenius pleads, in bar of the action on the notes, that the plaintiff has broken another contract which he entered into with the defendants, by which they have sustained damages equal to the debt which they owe the plaintiff. The mere statement of the case furnishes a sufficient answer to the plea. It may be true, as was contended on the argument, that the facts stated in the plea would be sufficient to sustain an action by Jones and Curtenius against Taggard & Co.; but it is no bar to the present suit, that the defendants may have another action against the plaintiff, and recover as much damages as will be recovered against them in the present suit. There is no such thing as setting up one right of action in bar to another right of action. One demand may in some cases be set off against another, but no attempt was made to sustain this as a plea of set-off. If the plaintiff has sold any of the property, or received dividends on the stock, the defendants can set off the amount as so much money had and received to their use. Whether the matters pleaded would entitle the defendants to relief in a court of equity need not be considered; it is sufficient that they constitute no defence in a court of law. *O'Kelly* v. *Sparkes*, 10 *East*, 369. *Donnelley* v. *Dunn*, 2 *Bos. & Pul.* 43.

The second special plea is substantially like the first, with two exceptions. It avers that when the notes become due and payable, and for a long time afterwards and before the bridge was carried away, the stock was of great value, to wit, of the value of $4500, and might, with due diligence, have been sold for that sum. It also avers that the payees of the notes have carelessly and improperly neglected to notify the defendants that the bridge stock was on hand and unsold, at any time since the month of October, 1828. The plea does not allege that the stock ought to have been sold at or before the time when the notes came to maturity; it only states that it might then, and for a long time afterwards, have been sold for a good price. The substance of the allegation is, that the stock should have been sold before the bridge was carried

away by the flood in 1831. The plea impliedly admits that the defendants had notice that the stock was on hand and unsold in October, 1828, and complains that they have had no notice since that time. Both of the notes had then been due eighteen months, during all which period the plaintiff had a perfect right of action, so far as appears, to recover the amount, and no subsequent default on his part, in a collateral matter, could bar him of that right. There must be judgment for the plaintiff on the demurrer to the second and third pleas, with leave to the defendants to amend on payment of costs.