### SCHROEPPEL *vs.* SHAW.

A dealing, by a creditor, with the principal debtor, in respect to a second or collateral security, will not, at law, discharge the surety from the payment of the principal debt; although he might have been discharged had the creditor dealt with the principal in the same manner, with respect to the original security.

A surety seeking to be relieved from the payment of a debt on the ground of the creditor's delay in enforcing collateral securities must establish the fact that he has lost the benefit of such securities by some act of the creditor inconsistent with his rights as surety, and not by any act or default of his own.

A surety will not be discharged by the delay of the creditor in the prosecution of the principal debtor, or mere inaction on his part in the collection of collateral securities, unaccompanied by an actual binding agreement with the principal for delay, or by fraud, or *wilful* neglect.

In order to effect the discharge of a surety on the ground of delay in proceeding against the principal, it must be shown that there was a valid agreement, upon a sufficient consideration, to forbear and give time for payment.

From such an agreement the law presumes injury to the surety, and holds him discharged, irrespective of actual damage.

A note given by a mortgagor, to the holder of the mortgage, as a consideration for the postponement of a sale under a decree of foreclosure obtained thereon, is void, and will not support an agreement by the payee to postpone the sale.

IN EQUITY.   The bill in this cause stated that on the 4th day of April, 1837, the plaintiff and Charles A. Baker, Theodore Wood and Gardner Lawrence made their promissory note for $2000, payable one year from date with interest, to Daniel J. Shaw, the defendant, or bearer, and on the 24th of the same month delivered the same to the payee; the plaintiff signing the same " as security" for the other makers.   That on the 30th of May, 1836, Joseph I. Bradley and William Jackson gave to Charles A. Baker their bond conditioned for the payment of $3000 in five equal annual instalments with annual interest; and that as collateral security for the payment of that sum they, at the same time, executed and delivered to Baker a mortgage upon a part of farm lot No. 241 in the city of Syracuse, which was afterwards duly recorded.   That the promissory note above mentioned was given for a loan of money made by

Shaw to Baker, Wood, and Lawrence, or some or one of them; and that the plaintiff was in fact, as the note on its face imports, a mere surety for the other parties thereto; which fact was known to Shaw. That it was a part of the agreement respecting such loan, that Baker should assign and transfer the said bond and mortgage to Shaw as a further security for the repayment of the money borrowed; and that previous to the giving of the note, it was known to the plaintiff that such loan was to be secured by an assignment of said bond and mortgage, and but for that understanding he would not have joined in the note. That in pursuance of such agreement, Baker, at the same time the note was delivered, executed and delivered to Shaw an assignment of the bond and mortgage, and delivered the bond and mortgage to him : which assignment had not been recorded. That Shaw thereupon executed, under his hand and seal, and delivered back to Baker a receipt in these words: "This is to certify that I have this day received of Charles A. Baker, of Syracuse, a bond and mortgage executed by J. I. Bradley and William Jackson, duly assigned to me; said bond and mortgage is dated May the 30th, 1836, given to secure the payment of $3000, in five equal annual instalments with annual interest, with said Baker's endorsement upon the same of the receipt of the first payment having been paid to him; said mortgage appears to have been recorded in the clerk's office of Onondaga county, in book No. 32, page 363, &c. that said assignment is made as collateral security to secure to me the payment of a certain promissory note for $2000, dated April 14, 1837, due in one year, and signed by the said Charles A. Baker, T. Wood, Gardner Lawrence and H. W. Schroeppel, which when paid I am to reassign said bond and mortgage to said Baker; but in case of default in payment of said note, I am to reassign the residue of said bond and mortgage after I shall have received the amount due upon said note. April 24, 1837. Daniel I. Shaw." That default was made in the payment of the said note given to Shaw, but that there was paid thereon, on the 21st day of April, 1838, $140, and on the 18th of May, 1839, $141; and that the plaintiff believed no other pay-

Schroeppel *v.* Shaw.

ment had been made on such note when Shaw commenced a foreclosure of the mortgage as afterwards mentioned. That on the 3d of November, 1840, Shaw filed a bill in his own name, and for his own benefit, against the mortgagors and their wives, before the vice chancellor of the seventh circuit, to foreclose the mortgage. That the first payment, of $600 and interest, which fell due on the 30th of May, 1837, was paid to Baker before the bond and mortgage were assigned to Shaw; that on the 30th of May, 1838, there fell due upon said bond and mortgage the further sum of $600 besides interest; on the 30th of May, 1839, the sum of $600 and interest; and on the 30th of May, 1840, the further sum of $600 and interest. That the three last mentioned instalments were not paid by the mortgagors, nor any part of such instalments, except a part of the accruing interest; and that Shaw, until he commenced the foreclosure suit, took no proceedings whatever, either at law or in equity, to collect those instalments, or either of them; but on the contrary, during all that time, negligently suffered and permitted the same to remain unpaid and uncollected, without the knowledge, or consent, or approbation of the plaintiff. The plaintiff alleged that during all that time Bradley and Jackson, the mortgagors, were perfectly responsible for the amount unpaid upon their bond and mortgage; and if Shaw had used reasonable diligence in enforcing the bond and mortgage against them he might and would have collected from them, before he instituted the foreclosure suit, moneys enough, or nearly enough, to have fully paid up the note signed by the plaintiff. And the plaintiff insisted that inasmuch as the said note lay in the defendant's hands, overdue, from and after the 4th of April, 1838, and inasmuch as during all the period aforesaid he held as collateral security the bond and mortgage, it was his duty to the plaintiff, as the surety in the note, to have taken earlier proceedings for the enforcement of the bond and mortgage. That after the suit for the foreclosure of the mortgage was instituted, the defendant so negligently and tardily conducted the proceedings therein that no decree of foreclosure and sale was obtained until the 10th of March, 1841, although no

defence was interposed by the defendants in that suit. That the plaintiff was advised and believed that Shaw might have enrolled and docketed his decree within 30 days after the same was obtained. That the mortgagors owned a considerable amount of other real estate in Onondaga county, which fact was known to Shaw ; and that had the decree been enrolled and docketed he might have acquired a lien on some other real estate, which would have secured the debt. That the master's report was made on the 13th of Feb. 1841, finding $3022,24 to be due and unpaid upon the bond and mortgage ; for which amount the decree was obtained. That Shaw caused the mortgaged premises to be advertised for sale, under the decree, on the 8th of May, 1841, but instead of permitting the sale to take place on that day, he wrongfully and negligently caused the same to be postponed, first to the 15th of June then next, then to the 1st day of July then next, and then to be further postponed until the 15th of July ; which several postponements were without the knowledge or consent of the plaintiff. That the first postponement was in consideration of Bradley's giving his note to the defendant for $200 ; and that such note was given upon no other consideration. That the premises were sold, under the decree, on the 15th of July, 1841, and were purchased by Shaw, the defendant, for $375 ; leaving a deficiency of $2851,22, for which the mortgagors were personally liable. That the mortgagors were able to pay the deficiency, for several months after the sale, and it could have been collected out of their real and personal property, and would have been collected had the defendant docketed his decree, and issued execution with reasonable diligence. That he did not enrol such decree, nor docket it in the court of chancery until April 30th, nor in the clerk's office of Onondaga county until May 9, 1842. That this delay was without the knowledge or consent of the plaintiff. That no execution for the deficiency was ever issued. That when the decree was at length docketed Bradley and Jackson had both failed, so that the decree was of no value, and had remained so ever since. That Bradley did not fail until shortly before that time. That Jackson was discharged

Schroeppel *v.* Shaw.

as a bankrupt, on the 17th of June, 1842, and Bradley on the 20th of Feb. 1843.   That on the 14th of September, 1842, Shaw sued the plaintiff and the other makers of the note, in the supreme court, and in August, 1843, recovered a verdict for the full amount of the note, and interest, on which verdict judgment was rendered on the 29th of August thereafter, for $2814,64 damages and costs, and said judgment was docketed in the clerk's office of Onondaga county on the 1st of September,1843. That when said judgment was obtained Lawrence and Baker were both insolvent, and still remain so.   That there had been paid on the note $140 on the 21st of April, 1838, $141 on the 18th of May, 1839, and $275,29 on the 15th of July, 1840; which last sum was so much of the sum of $375 bid by Shaw at the sale under the decree, the costs of suit and expenses of sale being first deducted.   That before the verdict was taken Shaw agreed with Lawrence to deduct those payments when he should take the verdict: in consequence of which understanding the plaintiff did not appear at the circuit; and the defendant took a verdict for the whole amount of the note, or nearly so, and entered his judgment accordingly, and claims a right to collect it.   That the mortgaged premises were worth $2500, and were worth nearly that when Shaw bid them off for $375.   That the plaintiff is interested in a large amount of real estate in Onondaga and Oswego counties, on which the judgment is a cloud.   And the plaintiff insisted that as the bond and mortgage were lost through the gross neglect and misconduct of the defendant, the loss should fall upon him, and that the plaintiff ought in equity to be relieved against the note, and against the judgment recovered upon the same.   That this ground of defence was not set up in the suit at law.   And the plaintiff claimed that the defendant was accountable for the value of the premises bid off by him, irrespective of his bid; and that inasmuch as he held the bond and mortgage as a security, and not absolutely, but in trust to collect and apply the avails thereof upon the note, he should be deemed to hold the mortgaged premises in the same way.   The plaintiff therefore claimed that the premises should be sold under the decree of

this court, and the proceeds of the sale applied upon the judgment; and that Shaw should be charged with the fair cash value of the premises after allowing him whatever sums of money it had cost him to acquire a title to the same. The plaintiff also claimed that the payments agreed by Shaw to be deducted before taking a verdict in the action upon the note, should be allowed him. The bill prayed for an answer, without oath, from the defendant; that the plaintiff might be discharged from the payment of the judgment; and the defendant might be decreed to execute to him a discharge of such judgment, so far as it affected the plaintiff; and that the defendant might be perpetually enjoined from issuing an execution upon such judgment as against the plaintiff, and from instituting or prosecuting any action or proceeding against him, for the collection of the said judgment; and for general relief.

The defendant put in an answer, in which he admitted most of the facts set forth in the bill. He denied, however, that the plaintiff was a mere surety, and insisted that he was interested in the note, or the consideration thereof, as principal. And he insisted that if he had suffered the bond and mortgage to remain unpaid and uncollected without the knowledge or consent of the plaintiff, still he would not be justly chargeable with negligence for so doing. He denied that the mortgagors, or either of them, were responsible to pay the amount unpaid upon the bond and mortgage, at any time, as the instalments became due, after the assignment to him; or that he could have collected the same, or any part thereof, but on the contrary he was informed and believed that the mortgagors were, during all that time, and still are, insolvent. And the defendant alleged that on the 30th of May, 1836, Bradley and Jackson gave a bond and mortgage on the same premises to J. H. Colvin for $2000 payable in six equal annual instalments, with interest. That this mortgage was given for the purchase money, and was delivered before the mortgage to Baker was executed, and was the first lien; which was known to Baker. That the whole amount secured by the Colvin mortgage, except $473,33, was unpaid at the time the Baker mortgage was

assigned to the defendant, and that Baker knew that fact, and that the Colvin mortgage was a prior lien.    The defendant denied that at the time of obtaining the decree of foreclosure the mortgagors had other real estate; that if they had, it was incumbered to its full value.    He also denied the charges in the bill respecting the postponements of the sale under the decree; and as to the solvency of the mortgagors, alleging, on the contrary, that they had been insolvent for several years.    And the answer alleged that an execution was issued for the deficiency, on the 30th of April, 1842, and no property could be found. That at the time of the sale the premises were not worth over $1200, and, subject to Colvin's lien, they were not worth $375, the sum bid by him.    That after the sale, the defendant, in order to protect his title, purchased the Colvin bond and mortgage for $1179,17, and took an assignment thereof.    That, at the time of making the loan, the defendant did not know of the Colvin bond and mortgage, but that the plaintiff knew of their existence.    That the plaintiff never offered to pay the note, nor requested the defendant to collect it of the makers, nor to foreclose the mortgage, or to collect the balance of the decree, nor to indemnify the plaintiff for any costs or expenses. And the defendant insisted that the plaintiff should have made such a request; and that his omission to do so was a full defence.    That on the 15th of August, 1840, Colvin obtained a judgment against Bradley and Jackson, on their bond, for $4000 of debt and costs, which judgment was assigned to the defendant Aug. 17, 1841, and the sum then due was $1179,07. That execution was issued on this judgment soon after it was docketed, and no property could be found, except what was incumbered for more than what it was worth.    The defendant insisted that all the grounds of relief set up in the bill might have been set up as a defence to the suit at law, upon the note, and that therefore the judgment was a bar to this suit.    He denied the making of the agreement relative to deducting the payments made upon the note, from the verdict, or that he had ever been requested to make any deduction.    He also denied that the mortgaged premises were worth over $1200 at the

time he bid them off; or that the bond and mortgage were lost through his negligence; or that he was accountable to the plaintiff for any thing more than the amount of his bid. And he alleged that he had been at all times ready to re-assign the bond and mortgage on being paid his debt, &c. A replication was filed, and a great mass of testimony was taken, before one of the justices of this court, at his chambers, in pursuance of a stipulation between the solicitors for the respective parties. This evidence it is not deemed necessary to detail, at length; the most important portions being mentioned in the opinion of the court.

*G. F. Comstock*, for the plaintiff. I. The grounds of relief set up by the plaintiff in this case could not be set up as a defence to the action at law upon the note. (15 *Wend.* 155. 10 *East*, 369. 2 *Russ.* 81. 3 *Cond. Ch. Rep.* 89.) II. It is therefore no defence to this suit that it is brought after trial and judgment at law. On the contrary, it is a well settled ground of jurisdiction in this court that the defendant has proceeded to judgment at law, and now threatens to enforce the judgment contrary to equity. (1.) The *power* of a court of equity to restrain legal proceedings, whether before or after judgment, is as well settled as the existence of the court itself. And originally the relief was usually granted after judgment. (2 *Story's Eq.* § 874. 2 *R. S.* 189.) (2.) The cases where the court refuse to interfere, are where the defence *was available at law, and no sufficient excuse* is shown for not setting it up. (2 *Story's Eq.* 894, 895.) (3.) Another class of cases is where the defence is a *legal one*, but the facts upon which it rests are solely within the knowledge of the opposite party. It is not necessary now to determine whether the defendant at law in such a case should file a bill of discovery purely, before trial at law, so as to use the answer as evidence on the trial, or whether he may safely wait until after trial and judgment, and then file his bill for discovery and relief. (*See* 2 *Story's Eq.* § 881; *Norton* v. *Wood,* 5 *Paige,* 245.) (4.) Another class of cases is where the defence *is a legal one*, but the party could

Schroeppel v. Shaw.

not avail himself of it through some fraud, accident, mistake, or other special circumstances. In those cases, after trial and judgment, courts of equity grant relief with caution and circumspection; but in a case of this kind, free from negligence or fault, relief is never denied. (2 *Story's Eq.* §§ 887, 894, 896. 7. *Cranch*, 332, *per Marshall, J.* 17 *John.* 384. 2 *Story's Eq.* 885, 886. 1 *Paige*, 451.) (5.) But when the defence is purely equitable in its nature, and could not, under any circumstances, be made available at law, the right to resort to a court of equity for relief after judgment, has never been in any case *denied or doubted*. (*See authorities already cited*.) (6.) If the defence at law be embarrassed *by doubts and difficulties*, that of itself is good ground of jurisdiction in this court. So if the defence be erroneously overruled by a court of law. (2 *Russ.* 81. 17 *John.* 384.) III. The facts in this case show that the bond and mortgage of Bradley and Jackson were lost through the negligence and misconduct of the defendant. This entitles the plaintiff, as surety upon the note, to relief. (1 *Story's Eq.* § 326. *Mayhew* v. *Crickett*, 1 *Swanst*, 185, 191, *and note* (a.) 8 *Pick.* 122. 4 *Ves. jr.* 824, 833. *Id.* 540. *Williams* v. *Price*, 1 *Sim. & Stu.* 581. *S. C.* 1 *Eng. Cond. Ch. Rep.* 582.) IV. The defendant is accountable for the value of the premises bid in by him at the mortgage sale, and not for the amount of his bid merely. The foreclosure suit was against Bradley and Jackson, and the sale only foreclosed their equity of redemption. But the assignment of the bond and mortgage to the defendant was itself a mere mortgage, and that has never been foreclosed. (*Slee* v. *The Manhattan Co.* 1 *Paige*, 48, 78, 79.) V. Besides the value of the land, the payments made to Shaw on the note, before verdict, should be allowed, pursuant to his agreement. (2 *Story's Eq.* § 880.)

*D. D. Hillis*, for the defendant. The facts charged and proved in this case constitute no ground of relief from the judgment against the plaintiff. The plaintiff was a joint maker of the promissory note upon which the judgment was obtained. No time was given to the makers of this note; or to the prin-

cipal debtors; nor was any act done in regard to the note, to discharge them.  What was done in regard to the collateral securities cannot here be taken advantage of by the principal debtor.  There was no *agreement* to proceed on the collateral securities, or to make the amount of the note out of it, as in the case in 15th Wend. 155.  There was no request on the part of the plaintiff, or of any of the other makers, to proceed to the collection of the mortgage.  The grounds of relief set up by the plaintiff could have been set up as a defence (if they are a defence) to the action at law upon the note.  If they could not, and are only a defence in equity, a bill for relief should have been filed, pending the suit at law.  By allowing four years to elapse after judgment, the plaintiff was guilty of laches, and ought not now to have relief.

*By the Court*, ALLEN, J.  It is well settled that the plaintiff could not have successfully defended the suit at law mentioned in the pleadings, upon the grounds relied upon for relief in this action.  A dealing by the creditor with the principal in respect of a second or collateral security, will not at law discharge the surety from the payment of the principal debt, although he might have been discharged had the creditor dealt with the principal in the same manner with respect to the original security.  (*Pitman's Pr. & Surety*, 203.  *Twopenny* v. *Young*, 3 *Barn. & Cress.* 208.  *Taggard* v. *Curtenius*, 15 *Wend.* 155.)  The plaintiff, as surety for Baker, for the payment of the original debt to the defendant, had rights well established in principle, and by authority, and which, enforced at a proper time, would in the view now taken by his counsel of the pecuniary ability of Jackson and Bradley, have fully protected him from any possibility of loss.  (1.) He was at liberty at any time to pay the principal debt and be subrogated to all the rights of the creditor and to all securities in his hands.  (*Story's Eq. Jur.* § 499, *and cases cited in notes* 1 *and* 2, § 502.  *Hodgson* v. *Shaw*, 3 *Mylne & Keene*, 190.)  (2.) He could have filed his bill in a court of equity to compel the creditor to seek his remedy first out of the collateral security and to enforce his remedy

against the mortgaged premises and the mortgage debtors at once. (*Story's Eq. Jur.* §§ 237, 499. *Ex parte Rushforth*, 10 *Vesey*, 409. *Hayes* v. *Ward*, 4 *John. Ch. Rep.* 123. *King* v. *Baldwin*, 2 *Id.* 554. *Huffman* v. *Hurlbut*, 13 *Wend.* 375.) It is incumbent upon the plaintiff to establish the fact that he has lost the benefit of the collateral securities by some act of the defendant inconsistent with his rights as surety, and not by any act or default of his own. It is settled by an unbroken line of authorities, that mere delay on the part of the creditor to enforce his remedy against the principal debtor will not discharge the surety; but to effect such discharge there must be a valid agreement, upon a sufficient consideration, to forbear and give day of payment. From such an agreement the law presumes injury to the surety, and holds him discharged. ( *Wright* v. *Simpson*, 6 *Vesey*, 714. *Boulton* v. *Stutts*, 18 *Id.* 20. *Commercial Bank* v. *French*, 21 *Pick.* 489. *United States* v. *Kirkpatrick*, 9 *Wheaton*, 760. *Fulton* v. *Matthews*, 15 *John.* 433. *Crealth* v. *Sims*, 5 *Howard*, 192. *United States* v. *Hunt*, 1 *Gall.* 42.) In the language of Lord Eldon in *Wright* v. *Simpson*, adopted by Chancellor Kent in *King* v. *Baldwin*, the surety is a guarantor, and it is his business to see whether the principal pays, and not that of the creditor. The reason of the rule which governs the rights and determines the liability of the surety, in case of a delay by the creditor to prosecute his remedy against the principal debtor, applies with full force to the action of the creditor in respect to collateral securities in his hands. In both cases the surety is in default. He has omitted to perform his part of the agreement. In the case now under consideration the plaintiff undertook to pay the defendant the full amount of his debt before the first instalment became due upon the bond and mortgage against Bradley and Jackson; and had he performed his agreement he would have been entitled to an assignment of that security, and would have had the actual possession and full control of it at the time the first instalment became due. How, then, can it be said that the plaintiff has lost the benefit of the securities by the act of the defendant in omitting to prosecute, when it is only by the viola-

Schroeppel *v.* Shaw.

tion of the positive agreement of the plaintiff that the defendant retained or had them in his possession at a time when they might have been enforced? If in the one case it is the duty of the surety, as a guarantor, to see that the principal pays, why is it not in the other case equally his duty to see that the principal pays the original debt and redeems the collaterals? A different rule would make the collaterals the principal securities, and then apply to them a law more stringent as against the creditor than would be applied if they were in fact the principal and not collateral securities. It would enable the plaintiff to take advantage of his own laches and default. It would establish a rule dangerous to creditors, and difficult of execution and application. The rules of law which govern the dealing of the creditor with the principal debtor are plain, reasonable and easy of application. Mere *inaction*, unaccompanied with a binding agreement for delay, will not discharge the surety; and a delay in pursuance of a valid contract for that purpose, will operate as a discharge of the surety, irrespective of actual damage. But if the rule contended for by the counsel for the plaintiff is the true rule, then each case of dealing with collaterals must be decided upon its peculiar circumstances, and not unfrequently by the fluctuating and uncertain discretion of an individual judge or of a jury. I should have great difficulty in determining, from the evidence, that Bradley was *solvent*, within the true meaning of that term, at any time after the first instalment became due upon the bond and mortgage, (*Huffman* v. *Hulbert*, 13 *Wend.* 377;) and that the amount of the first instalment would, *with certainty*, have been collected upon an immediate prosecution of the demand; and if that should have been collected the doubt is increased as to the next, and each subsequent instalment. It is true that from the evidence I should think it *probable* the first and perhaps the second instalment might have been collected. But in his own language Bradley was "hard pressed." There were judgments and executions against him, and although he paid them until 1842, it is impossible to say that the attempt to enforce the

Schroeppel v. Shaw.

collection of this bond would not have been the cause of his failure at that time.

The law requires good faith on the part of the creditor towards the surety; and hence he is discharged from liability if the creditor does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act when required by the surety which his duty requires him to do, and the omissions proves injurious to the surety. (*Story's Eq. Jur.* § 325.) An omission to sue the principal is not a breach of faith to the surety, and it is difficult to perceive how an omission to prosecute collateral securities can be a breach of faith, unless there is an express agreement on the part of the creditor to use reasonable diligence in their collection, or do some act in respect to them necessary to their validity as securities, or such agreement can be inferred from the circumstances of the case, or from the character and situation of the securities. Justice Story, in treating of constructive frauds which will discharge a surety, says, "if the creditor has any security from the debtor and he parts with it without communication with the surety, or by his *gross negligence* it is lost, that will operate at least to the value of the security, to discharge the surety." (*Story's Eq. Jur.* § 326.) And for authority he refers in note (1) to *Mayhew* v. *Crickett*, (2 *Swanst.* 185, 191, *and note a.*) *Law* v. *East India Company*, (4 *Vesey*, 833,) and *Capel* v. *Butler*, (2 *Sim. & Stu.* 457.) By referring to those cases it will be seen that "gross negligence" is something beyond, and entirely distinct from, mere delay. Indeed, Judge Story, in the same section and in the paragraph immediately preceding that quoted, asserts the principle that there is no positive duty incumbent on the creditor, to prosecute measures of active diligence—evidently treating delay as one thing and negligence or omission of duty as another and quite distinct matter. In *Mayhew* v. *Crickett* a debt was secured by two promissory notes, each for half the amount, of two sureties, and also by a warrant of attorney of the principal debtor upon which the creditor had entered up judgment and taken the goods of the debtor in execution, but he afterwards withdrew the execution.

Schroeppel *v.* Shaw.

Here there was something more than mere omission to enforce the judgment.   There was a *parting with the security ;* the goods of the principal debtor were released from execution without communication with the surety.   There was an act of the creditor which, as he was trustee for the sureties, was a fraud upon them.   In *Law* v. *East India Company,* the creditors had settled with the principal debtor and paid him a balance found due upon that settlement and suffered him to remove with his property over which they had control, and the court held the sureties for the settlement of the account and payment of any balance  discharged by such settlement and  payment; although it was erroneous in fact, the principal debtor afterwards becoming insolvent.   In *Capel* v. *Butler* the principal debtor assigned two vessels as collateral security for the payment of an annuity also secured by the joint bond of the plaintiff and the principal debtor, and the creditor neglected to perfect the assignment of the vessels in the mode required by acts of parliament for the registry of vessels and the transfer of property therein, by means of which omission the debtor was enabled to and did actually sell the vessels to other persons, and the surety had lost the benefit of the assignments.   The nature of the security required something to be done at once by the creditor to make it a valid security, and hence the law should, as it doubtless did imply an agreement on his part to perform that act without which the security was invalid.   An omission to do this would be gross neglect in an agent, bailee or trustee, and would be a breach of good faith on the part of the creditor toward the surety.   Judge Story, in the section quoted, doubtless had in view neglect of the character of that in the case last cited as the *gross neglect* which should discharge the surety, that is, the omission of an act agreed to be done by him, or evidently imposed upon him by the situation and character of the securities in his hands.   Indeed, a request from the surety to do this act might be implied, so necessary was it to his indemnity to bring the case within the principle discharging a surety "by the omission of the creditor to do an act when required by the surety which his duty enjoins him to do, and

the omission to do which proves injurious to the surety." The other cases relied upon by Judge Story are instances of the parting with the securities by the creditor, to the prejudice of the surety.

*Ex parte Muir*, (2 *Cox*, 63,) and *Williams* v. *Pierce*, (1 *Sim. & Stuart*, 581,) are relied upon by the counsel for the plaintiff in support of the principle contended for by him, that delay in the prosecution of the collateral securities, when by reason of such delay they become less available, discharges the surety. In the first case, J. T. gave his bond and warrant of attorney to D., conditioned for the payment of a certain debt by instalments, and D. assigned the bond and warrant of attorney to C. his creditor, and the latter failed to enter up the judgment, in consequence of which, upon the obligor's decease, other creditors obtained a priority which by perfecting the judgment and thereby making the debt of a higher nature he might have prevented, and secured the debt upon the real and personal estate of the obligor. It was held that the creditor was chargeable for his default, to the amount of the loss incurred by the forbearance. This case is distinguishable from the one now under consideration. (1.) The bond and warrant of attorney in their nature required further action to make them valid securities of the character and degree contemplated by the parties, and the debtor put it out of his power to perform this act by placing the papers in the hands of his creditor, and making that creditor his attorney in respect to them and the debt secured by them. There was therefore, as in the case of *Capel* v. *Butler*, a duty imposed upon the creditor in respect to the securities, by their character and condition. The correctness of the decision in the particular cause may be conceded; but the opinion of the lord chancellor goes farther than was necessary to decide the case, and his reasoning has not at all times been fully acquiesced in. The case is not even cited or referred to by Justice Story in his treatise on equity jurisprudence, when treating of the relative rights and duties of principal and surety. And while in *Williams* v. *Price* the decision was followed, the Vice Chancellor, Sir John Leach, takes

Schroeppel *v.* Shaw.

especial care to withhold his assent from the argument of the lord chancellor, and the principles advanced by him. (2.) In *Ex parte Muir*, the lord chancellor held that the bond which was the subject of the controversy had been assigned absolutely to the creditor and to its full amount, in discharge of the debt of the assignor. If the bond was assigned in payment of the principal debt, to be applied when collected, it might well be that the creditor was bound to use ordinary diligence in its collection, and to apply as payment upon the original debt what was actually collected or what might with reasonable diligence have been collected. This would be so within *Dayton* v. *Trull*, (23 *Wend.* 345.) But in the case before us, the assignment of the bond and mortgage of Bradley and Jackson was in pursuance of and a part of the contract by which the principal debt originated and was conceded to be as collateral to it, and the principal debt was to become due and payable before any part of the amount secured by the bond and mortgage became due. In *Williams* v. *Price*, a debtor had assigned to his creditor as collateral security for his debt, a judgment which he had recovered by confession against a third person, and the creditor had sued out two or more executions upon the judgment, but had not put them in the sheriff's hands, or having placed them in the sheriff's hands had withdrawn them, and after that had negotiated with the judgment debtor and had given him time for payment, and had taken from him acceptances which were dishonored, until finally the judgment was lost. The Vice Chancellor, Sir John Leach, refrained from expressing an opinion upon the question whether the creditor was bound to use legal diligence to give effect to the judgment, or whether he might remain passive until required by the assignee to resort to legal diligence, and said it was not necessary to determine those questions, but based his decision upon that of *Ex parte Muir*, and upon the fact that the creditor, by suing out execution, assumed the possession or control of the judgment in exclusion of the assignee, and that it was within the principle which charges the creditor in possession of property held by him as a security not only with what he actually re-

Schroeppel *v.* Shaw.

ceives but with what he might have received but for his *wilful default or neglect.* Many of the features of this case, and which by the vice chancellor were held to control the decision, are wanting in the one before us ; and it would be an unwarrantable extension of the principles of any decided case to hold the surety discharged by mere delay of the creditor in the prosecution of the principal debtor, or in the collection of collateral securities, unaccompanied by an actual agreement, fraud or *wilful neglect.* In the note to *Paine* v. *Packard,* and *King* v. *Baldwin,* (2 *Am. Lead. Cases,* 127,) it is attempted to reconcile the cases of *Ex parte Muir* and *Williams* v. *Price* with the decisions which hold that mere delay or omission to prosecute, on the part of the creditor, will not discharge a surety, by making a distinction between cases in which the creditor has received collateral securities directly from and by the voluntary act of his debtor, and those in which he has acquired them by legal or coercive measures, and by his own acts. But I find no case in which this distinction is taken, and there appears to be no distinction upon principle. The rights of the surety are the same whether the collateral security is taken at the time or after he has incurred his obligation, and whether he knew the fact or not; and it would seem to follow that it was immaterial by what means it was acquired. His creditor is alike the trustee of the surety in every case. (*Pitman on Pr. & Surety,* 114.) If the decisions referred to are put upon the grounds on which they may be put, and indeed upon the grounds upon which they were placed by the courts by which they were pronounced, then there are no circumstances to be reconciled, and the law will be harmonious. The same duties and the same liabilities will result from this quasi relation of trustee and cestui que trust, as to securities in the hands of the creditor, which exist between the creditor and the surety of the debtor as to the principal obligation, subject to be varied only by the express or implied contract of the parties.

    *Baker* v. *Briggs,* (8 *Pick.* 122,) merely decides that a creditor who has his debt secured by a surety and has also property pledged to him by his principal debtor, *may not surrender* the

property without the knowledge and consent of the surety; and if he does so he thereby discharges the surety to the amount of the property given up. In *Taggart* v. *Jones,* (15 *Wend.* 155,) there was an agreement that the creditor should use due diligence in disposing of the property pledged, (stock in a bridge company,) at the highest price, and this was omitted for some four years and until after the bridge was carried off and the value of the stock greatly depreciated. And it is of such a case that Bronson, J. says "whether the matters pleaded would entitle the defendants to relief in a court of equity need not be considered."

Up to November, 1840, the defendant took no action in respect to the bond and mortgage. He had merely delayed the commencement of proceedings to enforce their collection; and for mere delay we think he is not under the circumstances chargeable for any loss which may have ensued. He then undertook the foreclosure, and there is no evidence that there was any unnecessary delay in the proceedings up to the time of the decree and the advertisement of the mortgaged premises for sale; at least, no evidence of such delay as would amount to wilful default or negligence, or be evidence of fraud. The postponements of the sale appear not to have been unreasonable. They were for short periods, and with a view to procure an enhanced price for the premises, or to enable the mortgagees to do so. In the language of the vice chancellor, in *Williams* v. *Price,* "I think it would be difficult to find a principle for charging such a creditor simply upon the ground that he gave time to the debtor, upon the judgment; for it may be that the giving of time is a provident act, and affords the best chance of securing the debt." But it is said that the postponement upon one occasion was at the request of the mortgagor, and in consideration of his note for two hundred dollars, and that the case is therefore one of giving time in pursuance of a valid contract for that purpose. But the note itself in that case would be void, and could not avail as a consideration to support the agreement to give time. (*Pitman's Pr. and Surety,* 168. 2 *Am. Lead. Cases,* 171. *Tudor* v. *Goodlow,* 1 *B. Monroe,* 322.

*Pyle* v. *Clark*, 3 *Id.* 262, *and Scott* v. *Hull*, 6 *Id.* 285, *cited* 2 *Am. Lead. Cases*, 173. 1 *Comstock*, 274.) In this case, the usurious character of the note forming the consideration of this agreement, appears by the plaintiff's showing, and is not set up and proved by the defendant to invalidate an agreement apparently valid. We may add that the postponements of the sale were with the knowledge and assent of Gardner Lawrence, one of the co-sureties with the plaintiff in this suit and a joint debtor with him. We then come to the delay in docketing the decree for the deficiency, so as to make it a lien upon the real property of the mortgagor, and in enforcing the collection thereof by execution, from the last of July, 1841, until about the 1st of May, 1842.

During all this time, the defendant did no act inconsistent with the rights of the plaintiff as a surety. He was merely inactive. He did not, as in *Williams* v. *Price*, sue out executions, and then withhold them from the proper officer ; or negotiate with the mortgagor to give him further time, by agreement, and take bills for the amount of the debt on time, which in that case the vice chancellor held to be such an interference and assumption of control over the judgment as operated to discharge the surety. In this case, the plaintiff might at any time have paid the debt, and been subrogated to the rights of the defendant to the bond and mortgage and decree thereon, and have received the same unembarrassed by any agreement or negotiation by the defendant, and in a situation to be immediately enforced. The defendant had foreclosed the mortgage and sold the mortgaged premises, and then remained passive, as we think he might safely do, without prejudicing his claims, upon the surety. If Jackson and Bradley had been the principal debtors, and he had commenced proceedings against them, he could have stopped at any stage, and the surety could not complain. (*Lenox* v. *Prout*, 3 *Wheaton*, 520. *Com. of Berks Co.* v. *Ross*, 3 *Binney*, 520. *United States* v. *Simpson*, 3 *Penn.* 457. *Minerdorff* v. *Snyder*, 5 *Watts*, 179.) The most that can be claimed, is that by the assignment of the bond and mortgage to the defendant, the obligors and mortgagors,

Jackson and Bradley, became quasi principal debtors, not only so far as the sureties for Baker are concerned, but that Baker, so far as these securities were concerned, became a quasi surety or entitled to all the rights of a surety ; and in that view mere delay could not in any case vitiate the claim as against Baker and his sureties.   There is no claim for relief made in the case peculiar to the plaintiff *as a surety ;* and all the defendants in the judgment should have been parties to the suit.   (*Beggs* v. *Butler,* 9 *Paige,* 226.   *Boughton* v. *Allen,* 11 *Id.* 321.)   But this point was not made in the answer, nor upon the argument, and the decision is not therefore put upon the ground of a want of parties.

The next claim is, that certain payments should be allowed which might have been allowed upon the trial of the suit at law.   The plaintiff had a perfect remedy in respect to these payments, in the action at law, and should have sought it there. But this point is not taken in the answer as distinctly as it should have been ; and there is equity in the claim of the plaintiff to have them allowed at this time.   The agreement of the defendant was to make certain admissions upon the trial, and the attorney for the plaintiff testifies, that in consideration of that agreement he agreed not to defend the suit, and relying upon it, omitted to attend upon the trial ; and the defendant in pleading admits this to be true, by denying in his answer that he ever attempted or intended to enforce the judgment for the full amount.   It is true, that after verdict, the plaintiff and his co-debtors might and should have sought relief in the court in which the suit was pending.   He, by his attorney, had notice very shortly after the verdict, that the payments had not been allowed, and addressed the defendant upon the subject.   (*Story's Eq. Jur.* §§ 894, 895.   *Marine Ins. Co.* v. *Hodgson,* 7 *Cranch,* 332.)   But the defendant says he never claimed the full amount of the judgment, and does not very distinctly take the ground that the remedy was at law, and we therefore though with some hesitation, allow the payments at this time.   The plaintiff next claims that the defendant should be decreed to have taken the title to the premises purchased by

him upon the foreclosure of the Jackson and Bradley mortgage in trust as security for the payment of the debt, and for the benefit of the debtors. There is a difficulty in making such decree, for want of parties. Lawrence, Baker, and the representatives of Wood will not be bound by the decree. After the sale of the premises and an accounting with the present plaintiff in respect to the trust property, *they* may call upon him to account with them ; or they may repudiate the trust and insist that he purchased the property for himself at the price bid, and that that sum was absolutely paid upon the judgment at that time ; and the defendant may be called to litigate that question. But inasmuch as the defendant did not, in fact, credit the amount of his bid upon the note, and thus give color to the claim that he had bought the premises as trustee to apply the avails, whatever they might be, upon a resale, to the payment of the debt, and as his counsel upon the argument conceded that such decree might be entered, a decree may be entered declaring that the defendant holds the premises upon the same trusts, and for the same purposes, that he held the bond and mortgage, and directing a reference to Peter Outwater, jun. to ascertain and compute the amount paid to the plaintiff upon the verdict in the suit at law, and which should then have been credited and allowed to the plaintiff and his co-debtors, and directing the allowance of said sum with interest, in part payment of the judgments ; and also to ascertain and compute the amount due to him for the amount paid to acquire the Colvin mortgage, and for taxes, insurances, agencies and other expenses in and about the property and its preservation, with interest to the date of the report, deducting what he may have received for rents and profits, and directing a sale thereof, at public auction, upon the notice required for the sale of real estate on an execution at law ; and that out of the proceeds thereof be paid, 1, the amount which shall be reported due to the defendant for said payments, with interest to the time of payment ; and 2d, the residue to the defendant, to apply in payment of his judgment mentioned in the pleadings, and that said judgment be deemed satisfied, to the amount so paid.

Neither party is to have costs against the other. For al-
though the plaintiff has succeeded in part he had made no call
upon the defendant for the relief now obtained, before filing the
bill; and the defendant, although he has succeeded on the prin-
cipal grounds, should have demurred to the bill. He has in-
creased the costs by his defence, unnecessarily, and therefore
should not recover them as against the plaintiff.

ONTARIO GENERAL TERM, May, 1849. *Johnson, Maynard,
Welles, and Selden,* Justices.