## SCHROEPPELL *vs.* SHAW.

Mere indulgence to the principal debtor, at the will of the creditor, however long continued, and whatever may be the consequences, will not operate to discharge a surety.

And the rule is the same whether the indulgence is extended towards the principal debtor, or towards a third person liable to the creditor upon a collateral security.

The plaintiff, as surety for others, executed with them a note to the defendant for $2000, payable in a year. One of the principals at the same time assigned to the defendant as collateral security a bond and mortgage of a greater amount against third parties, which fell due by successive installments after the maturity of the note. *Held*, that the passive neglect of the creditor (there being no request on the part of the surety) to enforce the bond and mortgage, afforded no ground to relieve the surety even in equity, although the neglect continued for a long time, and the value of the security was thereby lost.

And although the creditor after waiting two and a half years, commenced without request, a foreclosure suit upon the bond and mortgage in season to have sold the mortgaged premises under his decree, and then to have docketed the decree for the deficiency in time to acquire a general lien upon property of the mortgagors, sufficient to pay the debt or some part thereof, but conducted his proceedings so negligently that before he docketed his decree their property was encumbered by other liens to its full value, and the debt secured by the bond and mortgage became thereby lost; yet *held*, that the plaintiff as surety was entitled to no relief at law or in equity.

Whether the negligence or misconduct of a creditor in respect to a *collateral security* in his hands may not be set up by a surety as a defence at law wherever it would be available in equity. *Quere.*

In general, the same facts which will exonerate a surety in equity will constitute a good defence at law. *Per* HARRIS, J.

And whenever a party has had an opportunity to avail himself of a defence at law and has omitted to do so, he can not afterwards resort to a court of equity to obtain the benefit of the same defence.

A surety, upon payment of the debt, has a right to the benefit of all the collateral securities held by the creditor.

APPEAL from the supreme court, where Schroeppell filed his bill against Shaw to be relieved against a judgment at law The case, as it appeared on the pleadings and proofs, was as follows: On the 4th of April, 1837, the plaintiff, as surety for Baker, Wood and Lawrence, executed with them a note for $2000 to the defendant, payable in one year; and at the same

time, Baker, one of the principals, for the purpose of securing the note, assigned to the defendant a bond and mortgage against Joseph I. Bradley and William Jackson, given on the 30th May, 1836, for $3000 payable in five equal annual installments, with annual interest on the whole sum. The first payment and interest had been received by Baker, before the assignment. The mortgage covered twelve acres of land in the city of Syracuse.

Default was made in the payment of the note, but there was paid thereon, April 21, 1838, $140, and May 18, 1839, $141. The bond and mortgage remained in the defendant's hands, and he took no steps to collect it, until November 3, 1840, more than two and a half years after the note fell due. In the meantime there had become due and remained unpaid upon the bond and mortgage, the following sums :

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| May 30, 1838, | principal, | $600, | interest, | $168, | | $768,00 |
| " | " 1839, | " | $600, | " | $168, | | 768,00 |
| " | " 1840, | " | $600, | " | $168, | | 768,00 |

$2304,00

The evidence tended to show that during all that time, Bradley, one of the mortgagors, was responsible, and that if the defendant had foreclosed the mortgage and docketed his decree for any deficiency remaining after a sale of the premises, it would have been a lien on property sufficient for its payment. Particularly, Bradley owned two brick stores, worth $9000 in cash, the only incumbrance on which until October 25, 1839, was a mortgage of $3350 ; and then the only additional incumbrance was another mortgage of about $2000. He was also during all that time engaged in considerable business, was in good credit, and owned a considerable amount of personal property.

On the 3d of November, 1840, the defendant commenced in the court of chancery, a foreclosure suit against Bradley and Jackson on the above mentioned bond and mortgage. He was the sole complainant in that suit, and the proceedings were conducted by his own solicitors. On the 10th of March, 1841, the defendant obtained by default the usual decree of foreclosure and sale, and on the 24th of that month, the mortgaged

premises were advertised to be sold under the decree, on the 8th of May ensuing.   On the day last mentioned, the sale was postponed until the 15th of June, when a further postponement was had until 1st of July, and then a further one until the 15th of July, 1841, when the premises were sold and purchased in by the defendant Shaw, for the sum of $375, subject to a prior lien of about $1200, held by one Colvin.   All the postponements of sale were by the direction of the defendant, or by arrangement between him and Bradley, the plaintiff being a stranger to the proceedings.   To procure one of the postponements, *Bradley gave his note to the defendant for* $200.

The evidence also tended to show that if the defendant had docketed his decree, and issued execution for the deficiency within a reasonable time after the sale, the whole or a considerable part of it might still have been collected out of the real and personal property of Bradley.   It appeared that the junior mortgage above mentioned on the two stores was foreclosed, and the property sold February 9, 1843, subject to the senior mortgage, and *produced about* $1000 *of surplus money, which in the due order of liens, went to pay judgments against Bradley, in favor of other persons, docketed on and after October* 8, 1841.   The defendant did not however cause his decree to be docketed in the county of Onondaga, where the mortgagors resided, so as to obtain a general lien on their property, nor cause execution to be issued against them, until May 9, 1842.   It was then too late.   Bradley had failed, and Jackson's failure and insolvency had occurred at a much earlier date.   There was no allegation in the bill, nor any evidence, that the plaintiff or any of the makers of the note in question, *had ever requested the defendant to take proceedings on the bond and mortgage.*

In September, 1842, the defendant brought an action on the note, against the plaintiff and the other makers.   The plaintiff pleaded to the action, but did not set up as a defence the negligence of the defendant in respect to the bond and mortgage of Bradley and Jackson, held by him as collateral security.   After issue was joined, the plaintiff agreed that a verdict might be taken against him at the circuit, and the defendant agreed that

in taking the verdict, he would allow the payments on the note before mentioned, (one of which had not been indorsed,) also the sum bid by him at the sale under the decree, deducting the costs of foreclosure. A verdict was accordingly taken against the plaintiff and all the makers of the note, and judgment perfected for $2814,64 damages and costs, on the 29th of August, 1843 ; but the payment not indorsed on the note and the sum bid as aforesaid were not deducted.

Against that judgment the plaintiff, by his bill in this cause, claimed relief on the ground that he was in equity discharged from the note, in consequence of the neglect and misconduct of the defendant in relation to the bond and mortgage against Bradley and Jackson, insisting that thereby the value of those securities had been lost. The bill also insisted that the payments and the sum bid by the defendant at the sale under the decree should be allowed against the judgment ; also that the defendant should be decreed to hold the mortgaged premises so bid in by him as a trust fund for the payment of the judgment, and that the premises should be sold for that purpose. The defendant, in his answer, insisted that the case furnished no ground for equitable relief ; that the alledged negligence and misconduct in relation to the bond and mortgage might have been set up at law in the action on the note ; that the judgment was a bar, &c.

The supreme court sitting in the fifth district made a decree, directing the allowance of the payments claimed, declaring also that the mortgaged premises, notwithstanding the foreclosure against Bradley and Jackson, were still held by the defendant as a security for the debt, and directing a sale thereof, but over-ruling the claim to relief on the ground of negligence in respect to the bond and mortgage. (*See* 5 *Barb.* 580.) The plaintiff appealed from the decree, except so far as it was in his favor.

*Geo. F. Comstock,* for appellant. I. The negligence and misconduct of the defendant in respect to the collateral securities in his hands constitute a ground of relief against the note, in favor of the surety, which was not and could not be set up

in the action at law. (*Taggard* v. *Curtenius,* 15 *Wend.* 155; *Kelley* v. *Sparks,* 10 *East,* 369.)

II. The judgment at law therefore is no defence to the suit. (2 *Story's Eq.* §§ 874, 886, 887; *King* v. *Baldwin,* 17 *John.* 384; *Marine Insurance Co.* v. *Hodgson,* 7 *Cranch,* 332; *Norton* v. *Woods,* 5 *Paige,* 245.)

III. The bond and mortgage assigned to the defendant constituted a fund to pay the note of which he was the trustee, and such fund having become lost or worthless by his inaction and gross neglect, the surety is entitled *in equity* to relief on that ground. (1 *Story's Eq.* § 326; *Mayhew* v. *Crickett,* 1 *Swanst.* 185, 191, *and note* (*a*); *Capel* v. *Butler,* 2 *Sim. & Stu.* 457; *Ex parte Mure,* 2 *Cox,* 63; *Burgeon Suretyship,* 180; *Williams* v. *Price,* 1 *Sim. & Stu.* 583; 4 *Ves. jr.* 833; 8 *Pick.* 122; *Pitman's Pr. and Surety,* 113, 203, 204, (40 *Law Library*;) *Theob. on Pr. and Surety,* 146; 2 *Am. Leading Cases,* 127; 1 *John. Ch. R.* 119, 129; 3 *id.* 614, 622, 624.)

IV. And if this doctrine is sound, it covers the whole case; for upon the facts there is no question but that if the defendant had proceeded upon the bond and mortgage within any reasonable time, the entire amount thereof, which exceeded the amount of the note, would have been made secure, and collected as it became due.

V. But even if the defendant is not chargeable with the consequences of his neglect prior to November 3, 1840, because *no request* to prosecute the bond and mortgage is shown, there is no such question after that date, for he then *actually commenced proceedings.* (*Williams* v. *Price,* 1 *Sim. & Stu.* 581; *and see authorities already cited.*)

VI. The neglect and misconduct of the defendant in the conduct of the foreclosure suit and proceedings were gross and inexcusable, and the debt was lost thereby, except the small sum bid on the sale. This exonerates the appellant. (*Williams* v. *Price, supra.*) Especially there can be no question that the defendant should be charged with the $1000 proved to have been lost in consequence of not docketing his decree for the

deficiency within a reasonable time after the sale so as to secure a general lien on the real estate of the mortgagors. The surplus money raised on the sale of Bradley's stores amounting to that sum, would, as the evidence demonstrates, have gone toward the satisfaction of the decree, if it had been docketed so as to become a lien.

*H. Ballard,* for respondent. I. There is no equity in the bill. Every allegation on which the claim for relief is founded, might have been set up as a defence in the suit at law upon the note.

The rule then applies, that where a party has neglected to set up his defence, in a suit at law, he can not be relieved in equity. (*Clark* v. *Niblo*, 6 *Wend.* 236, *opinion of Chancellor ; Sailly* v. *Elmore*, 2 *Paige*, 497 ; *Fonblanque's Equity*, 133, 134, *book* 1, *chap.* 3, § 3 ; *Story's Equity, vol.* 1, § 146 ; *Penny* v. *Martin*, 4 *John. Ch. Rep.* 566 ; *Beggs* v. *Butler*, 9 *Paige*, 226 ; *Crane* v. *Bunnell*, 10 *id.* 333 ; *People* v. *Jansen*, 7 *John. Rep.* 332.) Schroeppell *knew* when he signed the note that the bond and mortgage was *at the same time* assigned to Shaw as collateral security.

II. The note became due *on the 4th of April*, 1838. At the time the bond and mortgage were assigned to Shaw, nothing was due upon them, until *the 30th day of May*, 1838.

On the debt becoming due, the surety should have paid it, and asked to be substituted in the place of the creditor, as to all the securities held by him, or taken steps to compel the principal debtor to discharge the debt. It is for the surety to move in the matter.

There is no positive duty incumbent on a creditor, to prosecute measures of active diligence, and therefore, mere delay on his part, unaccompanied by any valid contract for such delay, will not amount to laches, so as to discharge the surety. .(1 *Story's Eq.* 330, 1, 656 ; *Lenox* v. *Prout*, 3 *Wheat.* 520 ; *United States* v. *Simpson*, 3 *Penn. Rep.* 437 ; *Mundorff* v. *Singer*, 5 *Watts*, 172.)

III. The proceedings to foreclose the mortgage were not tardily conducted, as the proofs show. The decree for the sale was

obtained as early as the rules and practice of the court permitted. *The postponements of sale* were not unreasonable. Shaw writes to Lawrence, the master, that he had no objections to the postponement to the 15th of July, "if it could be done without prejudice to the future collection of the money."

IV. After the sale, Shaw had the right to remain inactive, as to further efforts to collect the bond and mortgage. He did not act, and made no agreement, inconsistent with the rights of the surety. If Schroeppell wished further steps taken under the decree or wished his principal sued on the note, he should have requested the creditor so to do, and indemnified him for the risk, delay and expense of such proceedings. (2 *Story's Eq.* 171.)

HARRIS, J. Courts of law and of equity are governed by the same principles in determining whether a surety has been discharged by any thing done by his creditor. Defences of this character, whatever they once may have been, are no longer the subject of exclusive equity jurisdiction. Now, the same facts which will exonerate the surety from liability in equity, will constitute a sufficient defence at law.

It is also a familiar principle, that where a party has had an opportunity to avail himself of a defence at law, and has omitted to do so, he can not afterwards resort to a court of equity to obtain the benefit of such defence. Before a court of equity will interfere to deprive a party of the benefit of a judgment he has recovered at law, it must not only appear that it would be against good conscience to enforce the judgment, but also, that the party complaining could not have defended himself at law. (2 *Story's Eq.* § 887 ; *Marine Ins. Co.* v. *Hodgson*, 7 *Cranch*, 332 ; *Norton* v. *Woods*, 5 *Paige*, 249.)

In view of these principles I have been unable to see how a court of equity could obtain jurisdiction of this case. The facts, upon which the plaintiff relies, were, I think, equally available as a defence at law, as in equity. He omitted to make that defence at law. To permit him now to escape from the consequences of his neglect, by the interference of a court of equity,

Schroeppell *v.* Shaw.

would, as it seems to me, be a violation of one of the first principles of equity jurisdiction.

It was said by the learned judge who delivered the opinion of the supreme court, that "a dealing by the creditor with the principal, in respect to a second or collateral security, will not, at law, discharge the surety from the payment of the principal debt, although he might have been discharged, had the creditor dealt with the principal, in the same manner, with respect to the original security." The authorities cited in support of this distinction are *Pitman's Pr. and Surety*, 203; *Twopenny* v. *Young*, (3 *Barn. & Cress.* 208;) and *Taggard* v. *Curtenius*, (15 *Wend.* 155.) It is indeed said, by Pitman, that a dealing by the creditor with the principal, in respect to the second security, will not, *at law*, have the effect of discharging the surety on the original security. The only authority upon which he relies to sustain this position, is *Twopenny* v. *Young*. No such doctrine, however, will be found in that case. The facts were, that Young, the defendant, had signed a note to the plaintiff as surety with one Rummen. Subsequently Rummen had assigned to the plaintiff, as a further security, his household goods. The assignment contained a stipulation that Rummen should have the possession of the goods, until after three days' notice. The grounds of defence were, that the note was merged in the assignment, that being a security of a higher nature; and, secondly, that the agreement to give three days' notice was giving time to the principal, and therefore discharged the surety. It was held, very properly, that the deed did not extinguish or suspend the remedy on the note. But it is nowhere said in the case, that if the effect of the second security had been to extinguish or suspend the remedy upon the first, it would not have been available as a defence to the surety in the action upon the note. *Taggard* v. *Curtenius* has quite as little to do with the question. Indeed, the relation of principal and surety is not to be found in that case. The action was against the makers of two promissory notes. The defendants had deposited with the payees of the notes certain stock. They agreed to use due diligence in disposing of the stock, and to apply a portion of the

proceeds to the payment of the notes.   It was alledged that the payees of the notes had neglected to dispose of the stock, until it had become worthless.   It was held that these facts did not constitute a defence at law.   There is no allusion in the opinion of the court to the effect which such a transaction might have had upon the obligation of a surety.   The distinction, therefore, must be regarded as unsustained by any adjudged case.

Nor do I think there is any thing in the nature of the defence it-self, which should make it peculiarly the subject of equity jurisdiction.   But it may be that the case of *King* v. *Baldwin,* (17 *John.* 384,) should be considered as authority for the interference of a court of equity to relieve a surety after judgment.   In that case, the principal debtor being in embarrassed circumstances, the surety had repeatedly urged the creditor to collect his debt, but he refused to do so.   The principal debtor was discharged under the insolvent act, and after this a suit was brought against the surety.   Upon the trial of the action at law, the surety offered to prove these facts as a defence, but the judge, at the circuit, held that they did not make out a defence.   No motion was made for a new trial.   Judgment was entered up against the surety, and then he filed his bill in chancery, to obtain a perpetual injunction, to restrain the plaintiff from enforcing his judgment.   The chancellor dismissed the bill, but upon appeal the decision of the chancellor was reversed.   The circumstances under which this decision was made were somewhat peculiar, and such as, in my judgment, materially detract from the weight of its authority.   The case was determined by the casting vote of Lieut. Gov. Taylor.   The only opinion in favor of reversing the chancellor's decree, was delivered by Chief Justice Spencer. Justices Van Ness, Platt and Yates, were in favor of sustaining the chancellor's decision.   Among other distinguished lawyers, then members of the court, Senators Van Buren and Van Vechten voted for affirmance.   The latter senator delivered a very able opinion, showing conclusively, as I think, that the plaintiff was concluded by the recovery against him at law.   Chief Justice Spencer himself admits, that it was then settled that the defence might have been set up at law ; but he says that "un-

Schroeppell *v.* Shaw.

til the case of *Pain* v. *Packard*, (13 *John.* 174,) the principle had not been distinctly settled in the supreme court, and, "in similar cases, in the English courts, relief had been usually afforded in equity." "If it be doubtful," says he, "whether a court of law can take cognizance of the defence, and there exists no doubt of the jurisdiction of a court of equity, and, if in such a case, a defendant at law, under the influence of such doubt, omits to make his defence, or if he bring it forward and it be overruled, under the idea that it is not a defence at law, it is not granting a new trial for a court of equity to afford relief, notwithstanding the trial at law." I have been accustomed to regard the opinions of this great judge with the greatest deference, but I can not assent to the soundness of the doctrine upon which he advocates the right of a court of equity to take jurisdiction of a matter, which might have been set up as a defence at law, after judgment has been rendered in the action. There are cases where a pending litigation may be transferred from law to equity, on the ground that the remedy at law is uncertain or difficult; but, except in this single instance, I have never known this ground of jurisdiction assumed to sustain a suit in equity after the litigation at law had terminated.

But let it be assumed that the plaintiff is not concluded by the recovery against him at law from obtaining relief in equity, then the question arises, whether, upon the case presented, he is entitled to the relief sought.

The ground upon which the plaintiff claims that he is, in equity, entitled to be discharged from his liability, is the alledged gross negligence of the defendant in the collection of the bond and mortgage assigned to him as collateral security for his debt. In the consideration of this question, I shall, at least for the present, assume it to be true, as the plaintiff alledges, that by the exercise of promptness and vigilance, the defendant might have secured the payment of the bond and mortgage, and thus have relieved the plaintiff from his liability.

In considering the obligations of the parties to each other, as creditor and surety, it is to be borne in mind, that the plaintiff had, by signing the note, guarantied that his principals should,

in one year from the date of the note, pay the amount, with interest, to the defendant, or that he would himself be liable for its payment. Before the first installment upon the bond and mortgage had become payable, the note had become due, and the plaintiff, as well as his principals, was in default. The right of the defendant to sue the plaintiff for the recovery of the note at any time after it became due, will not be denied. Suppose a suit had been brought, and judgment had been recovered, before the alledged default of the defendant, in not securing the payment of the bond and mortgage, had occurred, can it be pretended that the subsequent neglect of the defendant could have the effect of an equitable discharge of the plaintiff's liability to pay the judgment? It seems to me that to sustain this bill, it is necessary to violate one of the cardinal principles of equity. The plaintiff was the party first in default. If he had performed his obligation to the defendant, he would have had the control of the bond and mortgage before any part of it became due. There was no time after the first installment upon the bond and mortgage became due, when the plaintiff was not in default, and liable to be sued for such default. To allow him to take advantage of any want of diligence in the defendant in collecting the bond and mortgage, under such circumstances, seems very much like allowing a man to take advantage of his own wrong. If the defendant was guilty of negligence the plaintiff was guilty of a positive omission of duty. The defendant was under no higher obligation to collect the bond and mortgage, than the plaintiff was to pay the note, and take the bond and mortgage himself.

But let us consider more attentively what constitutes such gross negligence as will operate to discharge a surety, when he is not himself in default. A surety has an undoubted right, upon the payment of the debt, to have the full benefit of all the collateral securities which the creditor has taken as an additional pledge for his debt. "It is hardly possible," said Lord Brougham in *Hodgson* v. *Shaw,* (3 *M. & Keen,* 190,) "to put this right of substitution too high." "The surety," says chancellor Kent, "by his very character, and relation of surety, has

an interest, that the security taken from the principal debtor should be dealt with in good faith, and held in trust, not only for the creditor's security, but for the surety's indemnity. The creditor must do no wilful act, either to poison it, in the first instance, or to destroy or cancel it, afterwards." (*Hayes* v. *Ward,* 4 *John. Ch.* 130.) " But this qualification should be added, says Story, that a mere omission by the creditor to collect the debt due of the hypothecated property, so that it is lost by his laches; will not discharge the sureties. The creditor must be guilty of some wrongful act, as by a release, or fraudulent surrender, of the pledge, in order to discharge the surety." (1 *Story's Eq.* §§ 501, 639.)

Thus, it will be seen, that, in reference to collateral securities, the rule is the same as in reference to the collection of the debt of the principal debtor. The creditor is under no obligation of active diligence for the protection of the surety, so long as the surety himself remains inactive. Until the surety moves in the matter, it is enough that the creditor holds himself in readiness to transfer to him, when he applies, all the securities he holds, that he may have the benefit of such securities in aid of his own responsibility.

The authorities upon which the plaintiff relies, will, upon examination, be found to harmonize with these general principles. The first case cited is that of *Mayhew* v. *Crickett,* (2 *Swanst.* 185.) In that case, the defendants held a warrant of attorney to confess judgment, executed by one Batteley, to secure the balance of his account to them, as bankers. Mayhew and one Gent, had also, each of them, signed a promissory note with Batteley, to secure the same indebtedness. The defendants had entered up judgment on the warrant of attorney, and had taken the goods of the principal debtor in execution, and had, afterwards, withdrawn their execution. They then sued Mayhew upon the note signed by him as surety. He filed his bill in chancery to stay the proceedings at law, and to be relieved from his liability as surety. Upon a motion to dissolve the injunction which had been granted, Lord Eldon said he had always understood, that if a creditor takes out execution

against the principal debtor, and waives it, he discharges the surety, on an obvious principle which prevails both in courts of law and courts of equity. The principle is, that he is a trustee of the execution, for all parties interested. Here, it will be perceived, there was something more than mere negligence on the part of the creditors. They had, by taking the goods of the principal debtor in execution, acquired a lien upon them. That lien was a security, not only for their debt but for the surety's indemnity. Good faith towards the surety required that they should not relinquish the security, thus acquired, without his consent, and having done so, the case is brought within the principle which discharges a surety, when the creditor has knowingly done any thing which deprives him of the benefit of the security held by the creditor. It was a violation of the trust which resulted from the relation in which the creditors stood to the surety.

The case of *Capel* v. *Butler*, (2 *Sim. & S.* 457,) I think, within the same principle. There one White had agreed to sell to Butler an annuity. To secure the payment of the annuity various securities were given, and among other things, White executed an assignment of two vessels to one Pruen, in trust for that purpose. The payment of the annuity was further secured by the bond of White and the plaintiff, as his surety. It was one of the conditions of the bond, that, after the expiration of two years White should be at liberty, upon certain terms, to repurchase the annuity. The transfer of the vessels was not perfected according to the forms prescribed by the registry acts, and, taking advantage of this omission, White had sold the vessels and applied the proceeds to his own use. The annuity being in arrear, Butler brought an action upon the bond. Capel, the surety, filed his bill to restrain the action, and claimed the right to repurchase the annuity according to the terms stipulated in the condition of the bond, and to have the value of the vessels deducted from the amount which he would otherwise have been required to pay upon such repurchase. The vice chancellor was of opinion that the plaintiff, as surety, was entitled to take advantage of the proviso for re-

Schroeppell *v.* Shaw.

demption, and that the value of the two vessels being lost to him by the neglect of the defendant Butler, he was entitled to deduct that value from the stipulated price of redemption. It appeared, by the recitals of the bond, that the plaintiff had become surety on the faith of the vessels being effectually assigned as a security for the annuity. For the defendant to omit an act necessary to render the assignment effectual, was equivalent to a surrender of the security to the principal debtor. It was like the case of a creditor taking a mortgage upon personal property and omitting to file it, or the omission of the creditor to protest a note held by him as collateral security, so as to charge the indorser. In these and similar cases a surety, whose means of indemnity had been impaired by the neglect of the creditor to do what was necessary to protect the security, might well insist upon his right to be discharged, to the extent of the loss sustained by reason of such neglect. If, for example, in the case under consideration, the mortgaged premises had been sold upon the foreclosure of the prior mortgage, the defendant would have been bound to take the necessary measures to secure the surplus moneys arising from the sale. Common justice would have required him to do this. The omission to do it, would have furnished strong ground upon which the plaintiff might claim to be discharged from his liability. Such cases of negligence, however, differ very widely, in principle, from mere inactivity in the collection of a debt held as collateral security. It was well said by the court below, in noticing the case of *Capel* v. *Butler*, that "the nature of the security required something to be done at once, by the creditor; to make it a valid security, and hence the law should, as it doubtless did, imply an agreement on his part, to perform that act without which the security was, invalid. An omission to do this, would be gross neglect in an agent, bailee, or trustee, and would be a breach of good faith on the part of the creditor towards the surety." It is this kind of negligence, undoubtedly, to which Justice Story refers when he says, (*Story's Eq.* § 326,) that "if the creditor has any security from the debtor and by his gross negligence it is lost, that will operate, at least to the

value of the security, to discharge the surety." In support of this position he refers to this case of *Capel* v. *Butler*, and *May-hew* v. *Crickett*, together with *Law* v. *The East India Co.* (4 *Vesey*, 833.)

In the latter case Law had signed a bond with one Tierney, who had been appointed to the office of military paymaster to the East India Company. The penalty of the bond was sicca rupees 100,000, conditioned for his duly accounting. Upon the death of Tierney, his accounts were stated, and a balance of sicca rupees 50,548 was found in his favor, which was paid to his administrator. Subsequently it was ascertained that Tierney was in fact indebted to the company to an amount exceeding the penalty of the bond. It was held that to the extent of the amount paid to the estate of Tierney, the surety was discharged. The mere statement of the case is sufficient to show that it is not an authority for granting the relief sought in this case.

Two other cases were relied upon by the plaintiff's counsel, to sustain the position that the defendant was bound to diligence in the collection of the bond and mortgage. These cases are *Ex parte Mure*, (2 *Cox*, 63,) and *Williams* v. *Price*, (1 *Sim. & Stuart*, 581.) Neither of these cases involved the relation of principal and surety. In *Ex parte Mure*, a debtor, holding a bond and warrant of attorney from his debtor, assigned them absolutely to his creditor towards satisfaction of his debt, making his creditor his attorney, and granting him all necessary powers to collect the debt. The creditor omitted to enter up judgment on the warrant of attorney for five months, in consequence of which the debt was lost. The lord chancellor said, " I am of opinion that whoever takes a bond in the manner this was taken, makes it his own to the effect of binding himself to make it available as far as he can by ordinary diligence. Generally speaking, that which would be negligence in one *employed* to make the bond available, must be so in one who has taken upon himself to make it applicable in payment of the debt of the assignor, and who is invested with complete authority for that purpose." Again he says, " The case of sureties,

Schroeppell *v.* Shaw.

being co-obligors on a bond, differs materially from this: for there, it would most certainly belong to the sureties to make application to the creditor to sue. There would be no pretence of equity, if the sureties were to lie by. But here, the assignee was in all respects the master of the bond."

*Williams* v. *Price,* is very similar, in its principal features, to that of *Ex parte Mure,* and was decided upon the authority of that case. There, a judgment was assigned by a debtor to his creditor as security for his demand. The vice chancellor said, "In referring it to the master to take an account of what the defendant has received, or might have received, without his wilful default or neglect, in respect of the judgment assigned to him, I am, in truth, following the authority of *Ex parte Mure,* without thinking it necessary, for the purposes of this case, to adopt all the principles which are there stated." The plaintiff's counsel, in arguing that case, relied upon distinguishing it from the case of a surety. "In a case like the present," said Mr. Sugden, "where a debtor assigns to his creditor a debt due to him from a third person, it is not necessary, in order to discharge the assignor, to prove such a giving of time by the assignee to the debtor, as is required for the purpose of discharging a surety in a suit between him and the creditor. *There, it is necessary to show that the creditor has actually tied himself up from suing.* Here, it is only necessary to prove a general course of forbearance on the part of the assignee, during which the circumstances of the debtor have been failing, and the debt is ultimately lost."

I have thus noticed, in detail, all the cases cited by the plaintiff's counsel to show that upon the facts presented in this case, the plaintiff should be relieved from the payment of the judgment against him, and have examined the principles upon which those cases were decided, that it might be apparent that, in no single instance, has it ever been held that the mere *passiveness* of the creditor, in the collection of his debt, either of the principal debtor or from collateral securities held by him, is sufficient ground for discharging the surety from his liability. No rule is more uniformly recognized than that mere indulgence, at the

will of the creditor, however long, or whatever may be the con-sequences, will not operate to discharge the surety. I think it may safely be added, that this rule is equally applicable, whether the indulgence is extended towards the principal debtor, or towards a third person, liable to the creditor upon a collateral security. The criterion by which to determine in any and every case, whether a creditor has done, or omitted to do, any thing which will have the effect to exonerate the surety, is stated, as I think, with perfect accuracy by Judge Story, as follows: "If a creditor does any act injurious to the surety, or inconsisten with his rights; or if he omits to do any act, *when required by the surety*, which his duty enjoins him to do, and the omission proves injurious to the surety; in all such cases the latter will be discharged, and he may set up such conduct as a defence to any suit brought against him, if not at law, at all events in equity." (1 *Story's Eq.* § 325.) After a very diligent examination of the authorities bearing upon the question, I feel great confidence in asserting that a surety has in no case been held to be discharged by the act, or omission of the creditor, where such act or omission has not been within the terms of this rule. Can it be pretended that the plaintiff's case is within either of the predicaments here stated? It is not pretended that the defendant has done any affirmative act, which has been either injurious to the plaintiff or inconsistent with his rights. Nor is it pretended that the defendant has omitted to do any thing which the surety had requested him to do. The case made by the plaintiff is one of mere voluntary forbearance and delay on the part of the creditor, without any agreement or obligation for such forbearance or delay, which forbearance, as I have assumed for the purpose of the discussion, has resulted in an injury to the surety. There never has been a moment when, if the plaintiff had seen fit to discharge his own obligation to the defendant, by paying the amount of his debt, he might not have received the collateral security in question, free from any stipulation or obstruction, which had been interposed by the defendant to prevent the utmost promptness in its collection. There never has been a time when the defendant has not been in a situation to

proceed at once, upon the plaintiff's request, to enforce the collection of the collateral security.   He has at all times been at liberty to terminate, at pleasure, his forbearance.   Under these circumstances, can it be said that the defendant has been guilty of any greater laches or neglect than the plaintiff himself?   And if not, shall a court of equity be called into activity to relieve the plaintiff from the consequences of his own default?   I am persuaded there is no principle of equity which goes so far.   To me there seems to be nothing in the case which, upon the most liberal application of the most favorable decisions, would entitle the plaintiff to a discharge from the payment of the judgment against him.   I am of opinion, therefore, that the case was properly decided in the court below.

The other members of the court, without passing upon the question whether the defence was available in the action at law, if any where, concurred in the opinion that the facts did not constitute a ground of relief in equity.

Decree affirmed.