By the Court.
O’Gorman, J.
It appeared in evidence that Joy & Bowman, a firm doing business in the city of New York in 1880, applied to Powers, the plaintiff, for a loan of $1,500. He refused to lend the money unless they procured a satisfactory indorser on their note. The defendant Silberstein consented to indorse for their accommodation, and they gave to the plaintiff their note for $1,500, dated April 10, 1880, and payable to their own *322 order one year from .date. This note was indorsed by them and by Silberstein and sent to the plaintiff, who thereupon sent his check of the same date for $1,500, payable to the order of Silberstein, and Silberstein indorsed the check and forthwith handed it over to Joy & Bowman.
There is evidence, that at the time of the making of this loan, it was contemplated that the son of the plaintiff should be taken into the employment of Joy & Bowman, but no arrangement on the subject between plaintiff and. them had been made.
The note became due on April 13, 1881, and was not paid by the makers, Joy & Bowman. It was put in a bank for collection, and duly protested, and notice of protest served on defendant Silberstein.
His defense was, that by a valid contract made between plaintiff and Joy & Bowman, the time for payment of the note was extended, without the consent or knowledge of him, Silberstein, and against his wish and in violation of his right to pay the note to plaintiff, and to enforce his rights as against the other defendants Joy & Bowman while they were yet solvent and able to respond to his demand.
The onus of proving this defense by a preponderance of evidence, was on defendant Silberstein. He. testified at the trial, that soon after he received notice of protest he went, accompanied by his son, to see the plaintiff at his house, with the intention of paying the note ; that he brought with him a blank check to be filled up for the amount of the note and interest, and that he brought also $1,000 in cash ; that at the interview with the plaintiff, which then took place, he, Silberstein, offered to pay the note, and the plaintiff answered : “ It is no use, I will settle it with these parties,” (Joy & Bowman). “I extended the money while my son is there in business, you need not trouble yourself.” And on being asked for the note he answered—“you need not trouble yourself, so soon as I feel better and go down town, I will send you *323 the note.” He was, in important respects, corroborated, as to what occurred at this interview, by the testimony of his son, and if this evidence stood uncontradicted, it would have warranted the inference, that in consideration of employment of plaintiff’s son, by Joy & Bowman, the plaintiff had bound himself by agreement, express or implied, to extend the time for the payment of the note, and promised to surrender it to Silberstein, and thereby reheve him from his obligation upon it as indorser.
There is evidence, that at the time the note became due, the makers were solvent, and continued to bé so, until 1884, shortly before the commencement of this action.
Silberstein, as an accommodation indorser, held the relation of surety for the makers, and the neglect of the plaintiff to collect the note of the makers in face of the indorser’s readiness to pay it, and his offer to pay it would have discharged the indorser, Silberstein, when, by reason of the subsequent insolvency of the makers, the power to collect the debt as to him, had been lost (Wells v. Mann, 45 N. Y. 327; Pitts v. Congdon, 2 Ib. 352 ; Schroeppell v. Shaw, 3 Ib. 446).
But the testimony of Silberstein and his son was flatly contradicted by that of plaintiff and his son, who denied that the interview occurred earlier than October, 1881, and stated that the conversation had reference only to a house, which Silberstein was then building, and that the matter of the note was not afluded to.
There was also testimony of Bowman, of the firm of Joy & Bowman, on the subject, to the effect that plaintiff refused to take a new note from Joy & Bowman, but consented to let them have the money for another year.
The learned trial judge left it to the jury to reconcile, if they could, this contradiction, and if that was impossible, to determine to which of the statements they would attach credit, and properly instructed them as to the legal effect of the facts as testified to by Silberstein, if they behoved him.
*324 The other circumstance on which the defendant Silberstein relied, is this. The note contains, on its face, no provision for payment of interest before maturity. It became due on April 13, 1881. Joy & Bowman sent their check, dated May 16, 1881, for $90, to plaintiff, which Bowman stated was for interest on this $1500.
On April 8, 1882, Joy & Bowman sent plaintiff their check for $90, and again on April 10, 1883, they sent him a check for the same amount, accompanied with a letter of that date, in which they state that the check was for interest due.
The counsel for the defendant Silberstein argued, that if these checks were paid and taken as interest upon this money, where no interest was due until after the maturity of the note, then Joy & Bowman were paying interest in advance, and if they were paying in advance, that operated as a bar to the recovery of Powers as against Silberstein. The trial judge refused so to charge.
There is no direct evidence of the existence of any intention or agreement, that these payments of interest, or that either of them, should be payment in advance, and the existence of such intention or agreement is not a necessary inference from the payments themselves ; and the trial judge would not have been justified in instructing the jury as requested. Mere indulgence on the part of the holder of the note to the maker does not release the accommodation indorser. It is necessary that the holder has actually tied himself up from suing (Schroeppell v. Shaw, 3 N. Y. 446).
Some effort was made to prove that Powers extended the time for payment of the note, in consideration of an agreement of Joy & Bowman to continue his son in their employment, and evidence was given of a conversation that took place between Powers and Bowman in which Bowman said, “We want you to indulge us. Frank, (meaning Power’s son) is with us. We would like to make him a success in business, and I suppose you like to know that he is doing well; and, I think, for that con *325 sideration you would like to leave us the money. To which Powers said, ‘ all right,’-and we continued Prank.”
But this conversation, although it might lead to the surmise that the continued employment of the plaintiff’s son by Joy & Bowman may have been an inducement to Powers to treat the firm with indulgence, does not supply evidence of any agreement on his part to leave them the money for any definite time, or to abandon any legal right he had to enforce payment of it when he chose.
The claim that Silberstein, the accommodation indorser, was released by the action or laches of the payee of the note, should have been sustained by sufficient proof. The burden of proof was on the defendant.
Apart, therefore, from the conversation first referred to, testified to by Silberstein, and as to which he was contradicted by the plaintiff, and which was left to the jury for their consideration, there was no evidence to sustain the defense that an agreement had existed between the plaintiff and Joy & Bowman, which gave to them any legal right to an extension of time to pay the note, for any definite period, or which impaired the right of the plaintiff to enforce payment from that firm at any time after maturity.
The protest of the note by the plaintiff, when due, and his refusal to accept a new note from Joy & Bowman seem inconsistent with the intention on his part to surrender any of his rights under the note.
The court cannot say, on examination of all the evidence, that the verdict was against evidence or against the weight of evidence.
The defendants’ exceptions do not disclose any error on the part of the learned trial judge, material or prejudicial to the defendant.
The judgment should be affirmed, with costs, and the order denying motion for a new trial should be affirmed with $10 costs.
Truax, J., concurred.