THE THIRD NATIONAL BANK OF MALONE, RESPOND-ENT, *v.* PATRICK H. SHIELDS, APPELLANT, IMPLEADED WITH DANIEL SHANE.

*Note secured by a chattel mortgage — right of the mortgagee to sue the indorsers on the note before foreclosing the mortgage — effect of the mortgagee taking the mortgaged chattels into his possession — practice — trial by jury — waiver.*

The holder of a note secured by a chattel mortgage may, without first exhausting his remedy under the mortgage, sue the indorsers upon the note, who, if they desire the benefit of any securities held by the holder of the note, must pay up the debt and thereby become subrogated to the rights of the creditor in respect to such securities.

Where the holder of such a note takes possession of the mortgaged chattels and fails to sell them, the debt which they were hypothecated to secure is presumed to be paid in full, or to the extent of the proved value of the mortgaged chattels, and the only way in which the holder of the note can relieve himself from this presumption, is to sell the chattels at auction and thus ascertain the amount to be actually credited in extinguishment of the debt.

Where, however, the right of the mortgagee to such mortgaged chattels is disputed by a third party, and the same have not been sold because his right to them remains undetermined, such presumption of payment of the debt does not arise, and, as between the mortgagee and the indorsers upon the note held by him, the latter may be called upon to pay the note and thus become entitled to be subrogated to the rights of the mortgagee, and to the risk of the validity of his title, to the mortgaged chattels.

Plaintiff being ready for trial at the circuit, defendant objected, but finally consented that if the case might go over, it should be tried at Special Term, and it was so ordered. The same justice presided at both terms and enforced at the Special Term the agreement and order made at the Circuit.

*Held,* that a trial by jury was waived in open court.

APPEAL by the defendant Patrick H. Shields from a judgment, entered, after a trial at a Special Term held in Franklin county, in the office of the clerk of the county of Franklin on the 28th day of December, 1888, in favor of the plaintiff.

The action was upon three promissory notes made by Lyman J. Folsom and indorsed for his accommodation by the defendants Shields and Shane, and discounted for Folsom by the plaintiff. The plaintiff knew that the defendants were accommodation indorsers. The notes were given at different dates in October, 1886, and the last one fell due February 28, 1887. Default was made in payment of all the notes of which the indorsers had due notice.

Folsom died March 1, 1887. In November, 1886, while the plaintiff held the notes, Folsom gave to it a bill of sale or chattel mortgage upon thirty top carriages of Hotchkin's make, "to hold as collateral security for any and all over-drafts or past-due paper that they may have or hold." It was recited in the mortgage that these carriages were stored in " Mechanics' Hall " on the fair grounds in Malone.

In December, 1886, Folsom gave plaintiff another chattel mortgage on fifty other carriages of the same make, recited in the mortgage to be stored in the same hall. This mortgage was recited to be to secure the plaintiff in the sum of $3,500 and interest (the face of the notes), which Folsom owed plaintiff, and as security for any paper held by it indorsed by defendants. This mortgage gave the plaintiff a power of sale.

Folsom, in January following, gave to Adams and Martin a chattel mortgage upon fifty carriages, recited in the mortgage to be stored in the said Mechanics' Hall. This mortgage was given to secure Adams and Martin against their indorsements upon Folsom's notes for $2,000, then past due and held by the People's National Bank of Malone.

It was conceded upon the argument that the plaintiff's mortgages had priority of lien over the mortgage of Adams and Martin.

Folsom having died March 1, 1887, both the plaintiff and Adams and Martin, on March second, went to Mechanics' Hall to secure the carriages covered by their mortgages. Plaintiff had the key of the building at the time of Folsom's death. There were seventy-nine carriages in the building. Adams and Martin claimed the right to take forty of them under their mortgage, and did take them, the plaintiff interposing no objection. The plaintiff took the remaining thirty-nine. Folsom was a dealer in carriages, and whether the carriages found in the hall after his death were identical with those there when he gave the several mortgages, did not appear. The defendants knew that Folsom had given the plaintiff the two mortgages, and Shields, the appellant, was told by plaintiff, the week of the transaction, that Adams and Martin took forty of the carriages out of the hall under their mortgage, and that the plaintiff took only thirty-nine. Shields made no objection, and subsequently made a partial payment upon one note, and promised to pay the three in full. Mrs. Hotchkin, the manufacturer of the carriages, soon after Folsom's death, claimed to own them and brought suits against the plaintiff and against Adams and Martin to recover the possession of the carriages respectively held by them. These actions are at issue and undetermined. Because of the action of Mrs. Hotchkin, the plaintiff has not sold the carriages. The defendants, by their answer, claimed credit upon the notes for the full value of the eighty carriages. The court found the carriages to be worth forty-five dollars each, or $3,600 in all, and found against the claim of the defendants, and directed judgment for plaintiffs for the full amount of the notes. The defendant Shields alone appealed.

*Kellas & Munsill*, for the appellant.

*John I. Gilbert*, for the respondent.

LANDON, J.:

The action was tried at Special Term without a jury. The appellant insists that the defendants seasonably demanded a jury trial and refused to waive it. This presents a question of fact respecting which the case settled by the learned trial judge must be deemed conclusive.

The case was upon the calendar of the Franklin Circuit in March, 1888, and the plaintiff pressed it for trial; the defendants objected

and finally consented, that if it might go over, it should be tried at the Special Term to be held in the county in May following, and it was thereupon so ordered, and in pursuance of such order, subsequently tried at said Special Term. The same justice presided at both terms and enforced at the Special Term the agreement and order made at the circuit. The defendants having asked the favor of a trial at the future Special Term, and their request being granted, were properly held to performance when the term arrived. We think it was a waiver in open court of the trial by jury. We have examined the other questions of practice presented by the appellant and think their disposition was at the discretion of the court, which was properly exercised. With respect to the merits, the defendants were liable upon their contract of indorsement, and the plaintiff could sue them upon that contract without first exhausting its remedy upon the carriages which the maker had transferred to it as security. (*First Nat. Bank* v. *Wood*, 71 N. Y., 405.) If the indorsers, being sureties, desire the benefit of any securities held by the creditor, they must pay up the debt and thereby become subrogated to the rights of the creditor as to the securities. (Id.) But the indorsers being sureties, and being known to be so by the creditor, the creditor cannot, without the consent of the sureties, release any hold which he has actually acquired upon the property or estate of the maker which might be made effectual for the payment of the debt. (*Shutts* v. *Fingar*, 100 N. Y., 539–546; *Cory* v. *Leonard*, 56 id., 494; *Grow* v. *Garlock*, 97 id. 81; *Schroeppell* v. *Shaw*, 3 id., 446; *Smith* v. *Erwin*, 77 id., 466.) To the extent that the indorsers are injured by such release of the securities, they have a defense against the plaintiff upon the notes. (Same cases; *Vose* v. *Florida R. R. Co.*, 50 N. Y., 369.) The trial court refused to find that the forty carriages covered by the mortgage to Adams and Martin were the same carriages previously mortgaged to the plaintiff, but the finding made is to the effect that at least twenty of them were. The court refused to find that the carriages taken by Adams and Martin were taken from the possession of the plaintiff, or were in its possession when Adams and Martin took them.

The court did find that the defendants, during the week of Folsom's death, " were informed about the said chattel mortgages, and as to the possession of the said carriages; that they made no complaint

as to what had been done in respect to them, but acquiesced in the same." This latter refusal to find, and the finding itself, cover questions which were sharply contested upon the trial, and are, undoubtedly, supported by the evidence. The appellant Shields afterwards made partial payments upon one of the notes and promised to pay all of them.

We think the acquiescence of the defendants is fatal to the portion of the defense, resting upon the ground that the plaintiff relinquished its hold upon a portion of the carriages.

Although it is not disputed on this argument that the plaintiff's mortgages were prior in lien to those of Adams and Martin, it is plain, from the attention given to the question upon the trial, that it was not certain which lien was prior, at the time the carriages were taken. The plaintiff did not withstand Adams and Martin's pretensions, and Shields, upon being advised of the fact, did not insist that it should. If Shields had objected to plaintiff's action, plaintiff might have retraced its steps, or, at least, have attempted to do so.

Mrs. Hotchkin, the manufacturer of the carriages, soon after Folsom's death, claimed to own them and sued the plaintiff and Adams and Martin, to recover possession of such part of them as each party had taken. These actions are at issue and undetermined. Unless Folsom gave to plaintiff a title to the carriages, defensible against Mrs. Hotchkin, he gave to it no security. The defendants should have paid their notes at their maturity and taken the securities. If they can, by their default in their obligations, and notwithstanding their acquiescence when told of the taking by Adams and Martin of forty of the carriages, compel the plaintiff and Adams and Martin to try titles with Mrs. Hotchkin, and themselves escape costs or risk, and then reap the advantages of success, or, without regard to the title of Folsom, recoup in this action the full value of the carriages, they will be unconscionably favored.

The defense in this action is an equitable one, and we think, under the circumstances, the defendants have no equity to recoup against the plaintiff for the carriages taken by Adams and Martin. They have shown no actual loss to themselves; it does not yet appear that they would be better off than they now are if plaintiff had taken all the carriages. It remains to consider whether the

defendants are entitled to be allowed the value of the thirty-nine carriages taken possession of by the plaintiff.

The defendant's position is, that since the plaintiff took possession of the carriages under Folsom's mortgages given to secure these notes, the debt which they were given to secure was thereby presumed to be paid, or paid to the extent of the proved value of the carriages; that the only way the plaintiff could relieve itself from that presumption was to sell the carriages at public auction, and thus ascertain the amount actually paid and the amount remaining unpaid, and that since the plaintiff has not sold the carriages the presumption of payment remains in full force, and thus defeats the right of recovery either in full or *pro tanto.* The following cases, among others, are cited in support of this position : *Pulver* v. *Richardson* (3 T. & C., 436); *Case* v. *Boughton* (11 Wend., 107); *Stoddard* v. *Denison* (38 How. Pr., 296); *Vose* v. *Florida Railroad Company* (50 N. Y., 369).

The presumption of payment, at least to the proved value of the mortgaged property taken possession of by the mortgagee after default, attaches when the mortgagee refuses to sell the property. He thus defeats the ascertainment of the exact sum the property could produce, and it is right that he should be charged with its fair value. Here Folsom's rights against the plaintiff measure the defendants' rights. The carriages have not been sold by plaintiff, because Folsom's right to mortgage them remains to be determined. It is not plaintiff's fault that the carriages have not been sold. It is either Folsom's fault or misfortune that his claim of title is disputed by Hotchkin; and whether fault or misfortune, it postpones the determination of the question whether he gave the plaintiff any security, and thereby postpones the question whether plaintiff should credit him with anything upon account of it. The defendants by paying the note can be subrogated to plaintiff's rights against the carriages, and, as between the defendants and the plaintiff, they clearly ought to incur the risk of the failure of Folsom's title.

The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS J., concurred.

Judgment affirmed, with costs.