WESTCHESTER MORTGAGE COMPANY, Respondent, *v.* THOMAS B. McINTIRE, INC., and THOMAS B. McINTIRE, Defendants, Impleaded with WILLIAM H. FOSTER, Appellant.

Second Department, October 20, 1916.

Guaranty and suretyship — bills and notes — guaranty of payment of promissory note induced by assignment to payee of moneys to become due on contract — failure of assignee to file assignment — when guarantor not discharged from liability.

Where the defendant guaranteed the payment of the note of a corporation, induced thereto by an agreement by an officer of the corporation to assign to the payee of the note moneys to become due under a construction contract, the assignment of which contract was prohibited and which assignment was void under the statute unless the contract and assignment were filed, the defendant is not released from liability on his guaranty because the assignee, being holder of the note, did not file the assignment, and the person with whom the construction contract was made afterwards paid sums due thereon to the corporation.

As the holder of the note took the assignment for its own security, not knowing that it was given to induce the defendant to execute the guaranty, it was under no duty to the defendant, owing to the mere fact that he had a right of subrogation, and was justified in not filing the assignment and running the risk of having the contract repudiated by the person with whom it was made.

Cases collated and analyzed, per THOMAS, J.

APPEAL by the defendant, William H. Foster, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 21st day of January, 1916, upon the verdict of a jury rendered by

direction of the court, both sides having moved for the direction of a verdict at the close of the case.

*Frederick B. Van Kleeck, Jr.*, for the appellant.

*Jonathan Holden*, for the respondent.

THOMAS, J.:

The court directed a verdict for the plaintiff in an action on a note. The note is signed "Thomas B. McIntire, Inc., by Thomas B. McIntire, Pres.;" its date is March 20, 1914; it is for $1,000, payable to the order of the plaintiff at the Mount Pleasant Bank. Under the same date the appellant Foster and Thomas B. McIntire executed a guaranty of payment of the note, and guaranteed Jonathan Holden against damage by reason of his indorsement of the note. Holden, induced among other things by the guaranty, indorsed the note; the bank discounted it. It was payable on May nineteenth. On May 1, 1914, the plaintiff took up the note, as well as a similar note for $500. The appellant urges several defenses. One is that the McIntire Company, per McIntire, assigned to plaintiff as security all moneys due or to become due under a contract which it had with Goldman for the construction of a sewage disposal plant, and that plaintiff did not file the assignment pursuant to section 15 of chapter 33 of the Consolidated Laws (Laws of 1909, chap. 38) until June 28, 1914, and that meantime, April fifteenth and June sixth, Goldman paid the McIntire Company two sums, $1,500 and $2,100; and that the McIntire Company directed Goldman to pay the balance, $2,455.25, to laborers, materialmen and subcontractors. The order is not dated, and there is no evidence of its delivery. The appellant shows an arrangement confined to him and McIntire, whereby the assignment was to be made to induce him to guarantee the payment of the note. He says that it was done so that he would not be in any danger, and that he signed the guaranty "upon his [McIntire's] assurance that he was to assign this contract over." One question is whether the assignment was given when the note and guaranty were delivered. Foster does not say that the assignment to the plaintiff of the Goldman interest was contemporaneous with the delivery of the note.

But the assignment is dated the same day as the note and guaranty, that is, March 20, 1914, but it is acknowledged on March 23, 1914. While Holden testifies that he received the Goldman contract as security, he says nothing of the time of its receipt. Its date indicates its delivery, unless the date of acknowledgment prevails. In *Crager* v. *Reis* (12 N. Y. Supp. 729) it was considered that the date of an acknowledgment later than the date of the instrument did not affect the presumption that it was delivered on its date. I regard the guaranty as a part of the arrangement. Holden accepted it as security, and whatever he should have done to protect the security he should have done irrespective of when he got the assignment. There is no evidence that Holden knew that the assignment was made to induce Foster to guarantee or protect him in so doing. He had the right to conclude that the assignment was to protect him, and, perchance, the Mount Pleasant Bank. It was his duty to do no act that would weaken the security, and to be mindful that he held it in trust relation for the surety, but in that connection he could reflect that by subrogation the surety could take what the creditor had and no more. Holden testified that he called Foster's attention to it, and to the fact that if Goldman knew of the assignment he could forfeit the contract and all payments, and that Foster stated that Holden had better not file it, as it might embarrass McIntire. Holden fixes the conversation a little before June, and says that upon advice he finally filed it. Holden says that in that conversation with Foster he offered to turn it over to Foster. Foster asserts that Holden saw him "late in the summer of 1914," and gave as a reason for not filing it that McIntire said that he did not want to file it. Foster denies that he said that he "did not want them to file" it, but rather, "I told them not to leave any stone unturned in regard to it, and to take good care of it." If that was in the late summer, the filing on June twenty-eighth met the request. That question, if essential to decision, was for the jury and cannot be used here. But was Holden obliged to file it at all? The statute is that no assignment of such a contract "shall be valid, until the contract or a statement containing the substance thereof and such assignment or a copy * * * be filed." (Lien Law [Consol. Laws,

chap. 33; Laws of 1909, chap. 38], § 15.)* Who had the duty to give it validity? It may be noted that after delivery the creditor and not the debtor, principal or surety would have the original to file; but the statute permits a copy to be filed. But, if the holder took it for his own security, not knowing that it was given to induce the appellant to execute the guaranty, no duty would flow from the holder to the guarantor from the mere fact that the latter had the right of subrogation. In *Keeler* v. *Hollweg* (23 Misc. Rep. 415) Justice GAYNOR suggested that as between the creditor and a surety the former was bound to keep a chattel mortgage alive by filing it, as he held it in trust for the surety; but it was mere *dictum*. In *Capel* v. *Butler* (2 Sim. & S. [Eng. Ch. 1825] 457) two vessels were transferred by the principal debtor as security, but the transfer was ineffective against later sale of the vessels by the debtor because the first transfer was not perfected according to the registry laws. It was recited in the bond that the surety became such on the faith of the vessels being effectually assigned as security for the debt — an element that does not enter into the case at bar. The vice chancellor decided that the two vessels were lost to the surety by the creditor's negligence and that their value should be deducted from the indebtedness. In *Philbrooks* v. *McEwen* (29 Ind. 347 [1868]) the question was carefully considered, and it was said that, but for the element noticed, "*Capel* v. *Butler* would stand in conflict with all the cases upon the subject, both English and American, so far as our examination has enabled us to discover them." In *Hampton* v. *Levy* (1 McCord Ch. [S. C.] 107) the creditor did not file the mortgage and the mortgagor conveyed the lands to others without notice. The obligor became insolvent and suit was brought against the surety. It was decided that failure to file the mortgage did not exempt the surety, although sued seventeen years after the bond was given. There was similar decision in *Lang* v. *Brevard* (3 Strob. Eq. 59). In *Pickens* v. *Finney* (20 Miss. [12 S. & M.] 468) it was decided that the failure of the plaintiff in an execution at law to have the judgment upon a forfeited forthcoming bond enrolled according to the statute did not discharge the surety on the bond, although the failure

* Since amd. by Laws of 1916, chap. 507.— [REP.

let in the liens of younger judgments, which took all the property of the principal. The opinion quotes the well-recognized rule that "Forbearance or mere passiveness on the part of the creditor will not release the surety; but he must do no positive act which would increase the hazard of the surety." In *Schroeppell* v. *Shaw* (3 N. Y. 446) it appears that one of the principals assigned to the defendant as collateral security a bond and mortgage which fell due by successive installments after the maturity of the principal debt. It was decided that the passive neglect of the creditor (there being no request on the part of the surety) to enforce the bond and mortgage afforded no ground to relieve the surety in equity, although the neglect continued for a long time, and the value of the security was thereby lost. In the opinion there is much discussion of the authorities, and in connection with *Capel* v. *Butler* (2 Sim. & S. 457) there is this comment: "It appeared by the recitals of the bond that the plaintiff had become surety on the faith of the vessels being effectually assigned as a security for the annuity. For the defendant to omit an act necessary to render the assignment effectual, was equivalent to a surrender of the security to the principal debtor. It was like the case of a creditor taking a mortgage upon personal property and omitting to file it, or the omission of the creditor to protest a note held by him as collateral security, so as to charge the indorser. In these and similar cases a surety, whose means of indemnity had been impaired by the neglect of the creditor to do what was necessary to protect the security, might well insist upon his right to be discharged to the extent of the loss sustained by reason of such neglect." The expression of the learned judge was in the course of argument and quite unnecessary to the decision. The opinion also states: "The criterion by which to determine in any and every case, whether a creditor has done, or omitted to do, anything which will have the effect to exonerate the surety, is stated, as I think, with perfect accuracy by Judge Story, as follows: ' If a creditor does any act injurious to the surety, or inconsistent with his rights; or if he omits to do any act when required by the surety, which his duty enjoins him to do, and the omission proves injurious

to the surety; in all such cases the latter will be discharged, and he may set up such conduct as a defense to any suit brought against him, if not at law, at all events in equity.' (1 Story's Eq. § 325.) After a very diligent examination of the authorities bearing upon the question, I feel great confidence in asserting that a surety has in no case been held to be discharged by the act, or omission of the creditor, where such act or omission has not been within the terms of this rule." That still leaves the question whether it was the duty of the holder of the security to file it. In *Barhydt* v. *Ellis* (45 N. Y. 107, 111) the guarantor of a lease was entitled to notice of default by arrangement. In *Wells* v. *Mann* (45 N. Y. 332) the decision was that the surety could not move the creditor to diligence. In *Third National Bank* v. *Shields* (55 Hun, 274) it was considered that where the holder of a note secured by a chattel mortgage takes possession of the chattels and fails to sell them, the debt is deemed either paid in full or to the extent of the value of the chattels, and that he can only relieve himself from the presumption by selling the chattels at auction and ascertaining the amount to be actually credited in extinguishment of the debt, unless there is some circumstance like that present in that case, which rebuts the presumption. It will be noted, however, that in that instance the creditor had affirmatively interfered with the status of the security, thereby assuming the duty to pursue the remedy. In *New York National Exchange Bank* v. *Jones* (9 Daly, 248) it was decided that the surety is not discharged by the omission of the creditor to refile the mortgage on property of the principal debtor, although by such omission the value of the mortgage as security is lost. *Board of Supervisors* v. *Otis* (62 N. Y. 88) touches upon the present question. The issue was whether the negligent failure of the board of supervisors to discover the error in the accounts of the county treasurer was a defense to an action against the surety on the treasurer's bond, and it was decided that it was not. In the opinion it is said to be an established principle " that sureties upon official bonds are not discharged by omission of duty or non-action by the obligees, or by the non-performance of any duty which is not owing directly to the surety," although the obligee may owe a duty elsewhere, which, if

observed, would have saved loss to the surety. The general doctrine is further illustrated in *Willard* v. *Welch* (94 App. Div. 179). A mortgage contained a clause requiring the mortgagors to insure buildings in an amount approved by the parties of the second part and assign the policy to such parties, and provided that in default thereof the mortgagees were authorized to effect such insurance at the expense of the mortgagors, to be added to the mortgage lien. It was decided that such provision imposed no imperative duty on an assignee of the mortgage to require an insurance on the premises, and failure of the assignee did not relieve the mortgagees from liability on a guaranty of payment of the mortgage executed upon its assignment. It was also decided that the guarantors were not released by the failure of the assignee of the mortgage to obtain insurance money that, upon fire, was paid directly to the mortgagors. In the opinion it was said of the assignee: "She could not do any act which would in any way add to or alter the liability of the sureties, but as long as she did nothing whatever they are not exonerated of their guaranty," citing *Schroeppell* v. *Shaw* (3 N. Y. 446), *Newcomb* v. *Hale* (90 id. 326, 331) and *State Bank* v. *Smith* (155 id. 185, 198). Moreover, in the present case the McIntire Company was prohibited from assigning the interest, and, in case it came to the knowledge of Goldman, he had the option to forfeit the contract and all payments thereunder. The result would be to weaken the financial strength of the McIntire Company by depriving it of resources; at least, that was the hazard, and in my judgment the creditor was not obliged to take it. Of course, Goldman could waive his right to forfeit, but the plaintiff was not bound to incur the peril of his not doing so. I think that this defense is not sufficient. The other defenses seem to me to be untenable, unless it be the one that it is not shown that McIntire had authority to make the contract. It is a complete answer to the lack of authority that the assignment described the note and carried the corporate seal.

The judgment should be affirmed, with costs.

JENKS, P. J., CARR, STAPLETON and PUTNAM, JJ., concurred.

Judgment affirmed, with costs.